**LANSBURGH et al. v. LANSBURGH et al.**

Court of Appeals of District of Columbia.
Submitted December 3, 1929.
Decided February 4, 1930.

No. 4852.

H. Wood and L. C. Garnett, both of Washington, D. C., E. H. Brownley, of Baltimore, Md., and A. L. Newmyer and M. W. King, both of Washington, D. C., for appellants.

S. C. Peelle, C. F. R. Ogilby, P. E. Lesh, J. P. Donovan, S. Lyon, V. L. Smathers, C. V. Imlay, A. Wilson, P. B. Cromelin, B. J. Laws, W. C. Clephane, J. W. Latimer, B. A. Clephane, W. H. De Lacy, and W. C. De Lacy, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. Henry Lansburgh, a resident of the District of Columbia, died testate November 29, 1925. His last will and testament having been duly probated, the plaintiffs, executors, and trustees under the will filed a bill in the Supreme Court of the District of Columbia for a construction of the will.

From the decree this appeal was taken.

The material parts of the will read as follows:

"After the payment of my just debts and funeral expenses, I give, devise and bequeath unto all my Sisters and Brothers who may be living at the time of my death, the shares of stock and trust certificates owned by me in the Corporation of Lansburgh and Brother, including all of my right, title and interest in and to the Corporation known as Lansburgh and Brother, as represented by the said shares of stock and trust certificates, said shares of stock and trust certificates, are to be held by them, in trust for a period of ten years during which time they are to share equally, (share and share alike,) of any moneys left over, after bequests I have covering the period of the ten years for the trust, which begins at my demise, after which the stock and trust certificates are to be equally distributed between them, (share and share alike,) sincerely trusting, each will live for many years to enjoy, to the utmost, perfect health.

"(1) I desire that the sum of One Thousand Dollars, ($1000⁰⁰⁄₁₀₀) be paid at once to the General Endowment Fund of the Shriners' Hospitals for Crippled Children in the name of W. Freeland and Mabel Kendrick, also that within one year after my demise the sum of Twenty Thousand Dollars, ($20,000⁰⁰⁄₁₀₀) be paid to the General Endowment fund of the Shriners' Hospitals for Crippled Children, so same can be placed at interest so $1000.00 per year can be realized, this Twenty Thousand Dollars, also, as stated

above is to be paid in and known as the W. Freeland and Mabel Kendrick Endowment Fund for the Shriners' Hospitals for Crippled Children.

"(2) I give and bequeath to each of my Nieces and Nephews living at the time of my death, the sum of One Hundred Dollars, ($100.00).

"(3) To William F. Murphy, who was my Assistant at Lansburgh and Brother for more than twenty five years, (and has now been employed. for forty years,) as evidence of his faithful services and friendship during my lifetime, the sum of Two Thousand Dollars, ($2,000.00).

"(4) To Mrs. Mary E. McCalley, for faithful services rendered as my Housekeeper, the home and all its contents, in my name, situated at 1001 Irving St. N. W. and I further bequeath to Mrs. Mary E. McCalley, two hundred dollars per month, ($200.00 per month,) to be paid to her during the term of her natural life, the said sum of two hundred dollars per month be a charge upon the stock of Lansburgh and Brother, and shall bind my Sisters and Brothers, as Executors of my Estate, their assignees, Executors, administrators and assigns.

"If at the expiration of five years after my death Mrs. Mary E. McCalley be living, I want a lump sum of Five Thousand Dollars to be given her, also, one year after my death the sum of two thousand ($2,000.00) be given her, this in addition to the Two Hundred Dollars, ($200.00) per month during her natural life, also to be given one Thousand Dollars, ($1,000), within a week after my death, as she has been most faithful, even when ill, nothing was ever a trouble for her in serving me and making life comfortable and do request the sums be a charge upon the stock of Lansburgh and Brother and shall bind my Sisters and Brothers as Executors, of my Estate, their Assignees, Executors, Administrators and assigns.

"(5) To Miss Edna E. Sellens, formerly of the city of Baltimore, Maryland, but now, residing in the District of Columbia, I give and bequeath the sum of Two Hundred Dollars ($200.00) payable to her during the term of her natural life, also at the expiration of two years the sum of five thousand dollars, ($5,000.00) be paid to her, besides the monthly allowance during her natural life, and I do request the said sums to be a charge upon the stock of Lansburgh and Brother, and shall bind my Sisters and Brothers as Executors of my Estate, their Assignees, Executors, Administrators and assigns.

"(6) To Miss Hallie J. MacArthur, formerly of Lynn, Mass., and now residing in the District of Columbia, I give and bequeath the sum of Five Thousand Dollars, ($5,000.-00) to be paid at the expiration of two years after my death, and I further request that the sum of Two Hundred Dollars, ($200.00) per month be paid her during the balance of her natural life, and also request that said sums to be a charge upon the stock of Lansburgh and Brother, and shall bind my Sisters and Brothers, as Executors of my Estate, their Assignees, Executors, Administrators and Assigns.

"(7) I will and direct that the sum of Fifteen Hundred Dollars, ($1500.00) shall be paid for a lot for my remains, on the mound, facing the road, near the chapel, in Rock Creek Cemetery, in the District of Columbia, and I request that I may be buried in said Cemetery, and I give and bequeath the sum of ($100.00) per year for ten years, which sum is to be set aside, (after being paid to the Cemetery Association, who have charge of Rock Creek Cemetery,) for the care of said lot, and I further request that within five years after my death, a Masoleum be built on said lot, to cost the sum of Five Thousand Dollars, ($5,000.00) and my remains be disinterred and placed therein, with the simple inscription, carved over the door way in marble, 'Call me Henry,' the date of my birth Feb. 2, 1869, and the date of my death, the above shall be paid out of the dividends received on the said stock of Lansburgh and Brother and subject to same conditions as set forth in preceding paragraphs.

"(8) I also direct that, during the five years I am interred under ground the sums not to exceed Two Hundred Dollars, ($200.-00) be expended by my Executors for the purpose of placing a plain stone, marking my grave, with the simple inscription 'Call me Henry,' with date of birth Feb. 2nd, 1869 and date of my death.

"(9) I give and bequeath $100.00 per year, for ten years, (one hundred dollars per year for ten years,) to the following institutions:

St. Joseph's Orphan Asylum.
St. Ann's Infant Asylum.
Father Russell for Orphans of St. Patrick's Church Parish, and if Father Russell be deceased, to St. Patrick's Church Parish for Orphans.
'Camp Good Will' for Outings of Poor Children.
Home for the Blind.
Ruppert Home of Anacostia, D. C.

Baptist Home of #3248 N St. N. W.
National Lutheran Home for the Aged.
Associated Charities of 923 H. St. N. W.
St. Vincent's Orphan Asylum of Edgewood, D. C.
Little Sisters of the Poor.
Masonic and Eastern Star Home at Lamond's Station.
German Orphan Asylum.
Matron of Washington City Orphan Asylum for benefit of the Orphans.
Jewish Foster Home.
Bruen Home for Children #3300 O St. N. W.
Episcopal Home for Children, Anacostia, D. C.
Methodist Home for the Aged, #601 M St. N. W.
The Presbyterian Home, #1420 M St. N. W.
St. John's Orphanage.
Hebrew Home for the Aged.

"(10)  Reverend James Shera Montgomery
Reverend John C. Palmer
Reverend David Ransom Covell
Reverend George F. Dudley
Reverend Charles E. Fultz
Reverend James E. Freeman
Reverend Dr. W. S. Abernethy, Church at 8th and H St.

Each of the above very dear friends are to be given $100. per year (One Hundred Dollars per year) to be placed at interest at 6% the interest only to be used in purchasing flowers for the sick, so that at the end of ten years the sum of $60.00 per year may be used for the purpose.

"(11) I do request my Sisters and Brothers to pay to the Masonic and Eastern Star Home, the sum of Twenty Five Dollars ($25.00) per year for the period of ten years, and at the expiration of ten years, the sum of Five Hundred Dollars, ($500.00) for the maintenance of the room known as the Henry Lansburgh Room.

"(12) All the rest, residue and remainder of my estate of every kind and description, wheresoever situate, real, personal or mixed, of which I may die seized or possessed, or have any title to or interest in at the time of my death, and all real estate other than my home at 1001 Irving Street N. W. and also all insurance policies on my life, payable to my estate, or to which my estate may be entitled at the time of my death, and any and all proceeds from the sale of any property of any kind whatsoever, I give, devise and bequeath, absolutely and in fee simple, to my Sisters and Brothers, including the shares of stock and trust certificates in the corporation known as Lansburgh & Brother given and bequeathed to my Sisters and Brothers, after the ten years of the trust, the dividends of which or such part thereof as may be required, shall be used and applied to the payment of the monthly and other sums payable to Mrs. Mary E. McCalley, Miss Edna E. Sellens, Miss Hallie J. MacArthur, The Masonic and Eastern Star Home, and other bequests herein set forth, including the purchase and maintenance of a lot in the said cemetery, the purchasing of a stone to be erected thereon and after five, or rather within a period of five years a Masoleum be built, upon the lot, my remains disinterred and placed therein, it be my full intent and purpose to give, devise and bequeath all of my estate of which I shall die seized and possessed unto my Sisters and Brothers, subject only to the Legacies, bequests and payments in this will set forth."

The testator left real estate appraised at the value of $15,087.65 and personal estate of the appraised value of $220,314.17. Of the personalty $206,400 was represented by 2,064 shares of the capital stock of Lansburgh & Bro., estimated to have a market value of $100 per share. It further appears that the debts and cost of administration are estimated at $70,000. The estate being solvent, and there being sufficient personal property to pay all debts and legacies, recourse need not be had to the real estate, which becomes a part of the residuary estate, except such as is specifically devised.

■ The principal question presented upon which construction is sought is the character of the legacies and the source from which they are to be paid. In other words, whether they are payable from the income of the estate or from the income and corpus of the estate. It is contended by the appellants that the legacies and bequests provided in the will are payable from the dividends of the stock and trust certificates covering a period of 10 years from and after the death of the testator; and that the income is insufficient to pay these obligations in addition to the debts and cost of administration.

Turning to the opening paragraph of the will, where the testator, after providing for the payment of his debts and funeral expenses, devises and bequeaths to his sisters and brothers living at the time of his death the shares of stock and trust certificates owned by him in the corporation of Lansburgh & Bro., with the further direction that the stock and trust certificates be held in trust for a period of 10 years, during which time the brothers and sisters are to share equally "of

any moneys left over, after bequests I have covering a period of ten years for the trust, which begins at my demise, after which the stock and trust certificates are to be equally distributed between them."

It is urged that the language here used indicates an intention on the part of the testator to subject only the income from his stock, which he knew from past experience to be productive and valuable, to the payment of the various legacies, bequests, and payments which he was providing for in his will. This language, however, cannot be accepted as conclusively indicating what was in the mind of the testator at the time the will was drawn. His intention must be deduced from the will as a whole.

Coming to the consideration of the separate bequests, the testator, in paragraphs 4, 5, and 6 of the will, used plain and unequivocal language in respect of the payment of the legacies and bequests. In each instance he provides that they shall "be a charge upon the stock of Lansburgh & Brother, and shall bind my sisters and brothers, as executors of my estate, their assignees, executors, administrators, and assigns." The repeated use of this language in connection with each of these legacies indicates a clear intention to charge the stock and trust certificates with their payment.

It is contended by counsel for appellants that the bequests contained in paragraphs 1, 2, 3, 8, 9, and 11 "are general legacies, and abate because all of the assets are specifically devised." Unquestionably these bequests standing alone would be regarded as general legacies, payable from the corpus of the estate, but not so, when considered in connection with the other provisions of the will. In the opening paragraph of the will the testator creates a trust estate, consisting of his stocks and trust certificates in the corporation of Lansburgh & Bro., which is subject to the payment of the "bequests I have covering the period of ten years for the trust"; and the language contained in the residuary clause wherein he directs that the trust estate "shall be used and applied to the payment of the monthly and other sums payable to Mrs. Mary E. McCalley, Miss Edna E. Sellens, Miss Hallie MacArthur, the Masonic and Eastern Star homes, and other bequests herein set forth, including the purchase and maintenance of a lot in the said cemetery." These provisions indicate a clear intention on the part of the testator to charge the trust estate, created in the opening paragraph of the

will, with the payment of the legacies, bequests, and annuities thereafter set forth. This results in converting the otherwise general legacies in question into demonstrative legacies, in that specific property, the stocks and trust certificates, are subjected to their payment.

In paragraph 7 of the will, the testator directs the purchase of a lot in the cemetery and the erection of a mausoleum, and specifically provides that "the above shall be paid out of the dividends received on the said stock of Lansburgh & Brother and subject to the same conditions as set forth in the preceding paragraphs." We agree with the court below in holding that this, like the others, is a demonstrative legacy. On this point the court said: "This would seem to be a charge upon the dividends of said stock only, if it were not for the concluding language, which carries into this paragraph the provisions made in the preceding legacies to Mary E. McCalley, Edna E. Sellens and Hallie MacArthur; in other words, while he specifically charges this legacy against the dividends, he also makes it a 'charge upon the stock of Lansburgh & Brother.' It is, therefore, a demonstrative legacy, and in the same class with the legacies to the three women heretofore mentioned."

In the absence of the concluding clause, there is a specific direction that the money used to carry out the objects of this paragraph of the will shall be paid from the dividends on the stock, indicating clearly a distinction in the mind of the testator between the dividends and the corpus of the stock. He displayed his ability to designate payments from the dividends when he desired; and, if it had been his intention that all the bequests, legacies, and annuities should be paid from the dividends, he would have said so, since he disclosed a clear knowledge of the manner in which to express such an intention. It may well be, as suggested by the court below, that the testator thought that the dividends covering a period of 10 years would be sufficient to pay all of the bequests and legacies provided for in the will; but to safeguard against a contingency that might arise (since the trustees had full control of the corporation and the declaration of dividends), whereby the dividends would be inadequate to meet these obligations, he inserted the concluding words in the residuary clause, in which he bequeathed the entire residue of his estate to his brothers and sisters "subject only to the legacies, bequests and payments in this will set forth."

We agree with the court below "that these legacies meet all the requirements laid down by the authorities for demonstrative lega- cies." In Plant v. Donaldson, 39 App. D. C. 162, 165, the court distinguished between specific and demonstrative legacies as follows: "A specific legacy is the bequest of a particular thing, or a specified part of a testator's property distinguished from all others of the same kind. If the will indicates not the gift of the specified part of the estate, but its designation only, as a certain interest or fund from which the bequest shall be primarily paid or satisfied, it is a demonstrative legacy."

■ The gifts and bequests here in question are payable first out of the income of the stock of Lansburgh & Bro., then out of the corpus of the stock, which is manifestly sufficient to meet all of these obligations. In the event, however, that it were not, then they will be payable out of the general assets of the estate. In any event we are dealing here with demonstrative legacies. As said by Mr. Chief Justice Fuller, in Kenaday v. Sinnott, 179 U. S. 606, 618, 21 S. Ct. 233, 237, 45 L. Ed. 339: "A legacy of quantity is ordinarily a general legacy; but there are legacies of quantity *in the nature* of specific legacies, as of so much money, with reference to a particular fund for payment. This kind of legacy is called by the civilians *a demonstrative* legacy; and it is so far general, and differs so much in effect from one properly specific, that if the fund be called in or fail, the legatee will not be deprived of his legacy, but be permitted to receive it out of the general assets; yet the legacy is so far specific, that it will not be liable to abate with *general* legacies upon a deficiency of assets."

■ In paragraph 4 of the will testator devises to Mrs. Mary E. McCalley "the home and all its contents, in my name, situated at 1001 Irving St. N. W." Construction is asked whether the language used included jewelry and household furniture which was in the home at the time of testator's death. In the absence of reference to any particular or general class of property contained in the house, the rule of ejusdem generis cannot apply in this instance. There is no additional language to aid construction. The devise is of "the home and all its contents." In Gaff v. Cornwallis, 219 Mass. 226, 106 N. E. 860, 861, a bequest of the "contents, if any, of a drawer in said safe," included notes and stock found therein; and in Bromberg v. McArdle, 172 Ala. 270, 55 So. 805, Ann. Cas. 1913D,

855, a devise of a house and lot, 'together with all of the household and kitchen furniture, and all other personal property contained in said residence," was held to carry the sum of $800 found in the house. We are of the same opinion as that reached by the court below that all the contents of the home were included within the bequest.

That it was the intention of the testator to bequeath to his sisters and brothers only the portion of his estate which remained after paying the legacies, bequests, and annuities, is clearly indicated in the closing words of the residuary clause, where the testator uses this significant language: "It be my full intent and purpose to give, devise, and bequeath all of my estate of which I shall die seized and possessed, unto my sisters and brothers, subject only to the legacies, bequests, and payments in this will set forth." The testator was not here referring merely to dividends or income or their disposition, but to the disposition he desired made of his entire estate. It was his intention clearly expressed in the closing words of his will, and there can be no misunderstanding his desire; namely, that after all his debts were paid, and the legacies, bequests, and annuities satisfied, the residue and balance of his estate should go to his sisters and brothers. To attempt to confine this language merely to the income of the estate, or the dividends derived from the stocks and trust certificates, would be equivalent to writing a new will different in intent and effect from the one before us, and this we are not permitted to do.

While it appears that the income for 10 years from the stocks and trust certificates on an 8 per cent. basis would, in the aggregate, have paid the debts, legacies, and annuities, as provided in the will, the testator, a man of affairs, must have realized that there was no assurance that the dividends for 10 years following his death would amount to 8 per cent. annually. It was within the power of the residuary legatees who were in complete control of the corporation to divert the dividends to surplus, and thereby greatly diminish the income that would be derived therefrom.

The will itself refutes the idea that the testator intended that the debts, legacies, etc., should be paid out of the dividends. The total legacies payable during the first year after his death amounted to $34,025. The debts of the testator at the time of his death were approximately $50,000. This imposed an obligation upon the estate of approximately $84,000 not including funeral expenses and

costs of administration, which had to be met during the first year. Assuming, therefore, that the dividends covering the 10-year period would be sufficient to pay the debts and legacies, the testator could not have been blind to the fact that the first year's obligations must be met from some other source, since upon an 8 per cent. basis the dividends would have amounted to but $18,832.14. This, we think, clarifies the language used in the opening paragraph of the will, where the testator, after providing for the payment of his debts and funeral expenses, bequeaths to his sisters and brothers his shares of stock and trust certificates to be held in trust for a period of 10 years, "during which time they are to share equally (share and share alike) of any moneys left over, after bequests I have covering the period of ten years for the trust, which begins at my demise, after which the stock and trust certificates are to be equally distributed between them." The testator here undoubtedly had in mind the large payments that would have to be made during the first year, and, if the dividends kept up to expectation during the 10 years, there would be a large balance from the income left at the end of the trust period to be divided between his sisters and brothers, as well as the stock and trust certificates remaining which should likewise be divided. In other words, the residuary legatees should take his estate that remained after they had paid everything provided for in the will.

■ The court below, having determined that the various bequests and legacies are demonstrative in character, adjudged that "interest at the rate of 6 per centum per annum should be allowed and paid on $1,000 to the General Endowment Fund of the Shriners' Hospitals for Crippled Children, mentioned in paragraph 1, from date of probate, December 7, 1925; on $20,000 to the same legatee, on $100 each to nieces and nephews, named in paragraph 2, and on $2,000 to William F. Murphy, named in paragraph 3, from November 29, 1926; on annual payments due under paragraphs 7, 9, 10 and 11, from the date when such payments became annually due, interest on first payment to begin November 29, 1926."

The rule that general legacies commence to bear interest from one year after the testator's death has no application, since there is a specific direction to pay those sums at a stated time, and interest will run from that time, irrespective of when they are paid. In this instance there seems to be no occasion, as in the case of general legacies, to wait the period of one year for the settlement of the estate to determine whether or not there is sufficient funds out of which to pay the bequests. The estate is clearly solvent, and there is no question but what there will be sufficient, after the payment of the debts, to take care of the various bequests and legacies with a large residuary balance for the residuary legatees.

[8] Cross-appeal was prosecuted by Mary E. McCalley, Edna E. Sellens, and Hallie J. MacArthur, from so much of the decree as fails to hold that their legacies are a first lien or charge upon the 2,064 shares of the capital stock of Lansburgh & Bro. The mere fact that the testator directed that these legacies should be a charge upon the stock of Lansburgh & Bro. is not sufficient to create a prior lien in their favor as against other legacies payable from the same fund. In the case of Matthews et al. v. Targarona et al., 104 Md. 442, 65 A. 60, 65, 10 Ann. Cas. 153, the testator bequeathed a sum of money to a woman, and stated that it was in consideration of her personal services and attention to him during sickness, and also for money loaned by her to him, and directed that the legacy was to be payable out of a claim against the United States in the amount of $10,000. He also bequeathed a sum to a man, and stated that it was in consideration of money loaned. The evidence disclosed that the services rendered were gratuitous; and that the charges for money loaned were grossly excessive and much less in each instance than the amount of the legacies. There were three other legacies payable out of the same fund. The court held that, although they were demonstrative legacies payable out of a specific fund, they were not entitled to priority of payment over other legacies, but that they abated proportionately if there was an insufficiency of assets to pay the various legacies in full. On this point the court said: "Demonstrative legacies have a lien on the designated fund, and hence are placed on the same plane as specific legacies and devises. They are preferred to general legacies because it is to be inferred that, by referring to specific parts of the estate for their payment, the testator intended them to be preferred to the other legacies which he had not secured, and, when a fund has been thus set apart for the payment of five legacies of equal amounts, and it partially fails, it would seem to be contrary to the manifest intention of the testator, to give preference to two of them over the others. If the testator actually

owed the appellants, they have their remedy and are not obliged to take the legacies, but can sue for the debts. In such a proceeding, it can be determined what was really due, and there will be no danger of giving a preference for services for which they may not be entitled to priority."

In the present case the legacies are demonstrative, payable out of the income and corpus of the stock and trust certificates of Lansburgh & Bro., and the mere declaration that, as to certain gratuitous legacies, they shall be a charge upon the stock, is not sufficient to establish priority over the others.

The decree is affirmed, with costs.