**WHITESIDE et al. v. WASHINGTON LOAN & TRUST CO.**

No. 6964.

United States Court of Appeals for the District of Columbia.

Argued Nov. 9, 1937.

Decided Dec. 20, 1937.

Rehearing Denied Jan. 31, 1938.

J. Richard Earle and Louis M. Denit, both of Washington, D. C., for appellants.

Paul B. Cromelin, Bolitha J. Laws, Francis C. Brooke, Arthur Peter, Arthur C. Keefer, J. Bond Smith, L. Q. C. Lamar, and Dean Hill Stanley, all of Washington, D. C., for appellee.

Before GRONER, STEPHENS, and MILLER, Associate Justices.

GRONER, J.

This is an appeal by the residuary legatees of May B. Behrens, deceased, from a decree of the District Court instructing the executor of her will to pay interest from one year after the death of Mrs. Behrens upon the general legacies provided in her will.

Mrs. Behrens died in Washington city January 25, 1920. She was then forty years of age. Her only surviving relative was her mother. Her will had been duly executed the preceding 7th day of March. After providing for the payment of her debts, she made the following bequests:

· "Second. I give and bequeath unto Grace Middleton Herndon, Isabel Middleton Morley, George Middleton, and Frederick Middleton, all of the City of Washington, District of Columbia, each the sum of Five Thousand ($5,000) Dollars.

"Third. I give and bequeath unto Rachel Mothersead of the City of Washington, District of Columbia, all of my jewelry and personal effects, and the sum of Twenty Thousand ($20,000) Dollars, and unto Mrs. W. H. Bowker, now residing at the Baptist Home, in the City of Phila-

84

delphia, State of Pennsylvania, the sum of Ten Thousand ($10,000) Dollars, provided she survives me.

"Fourth. I give and bequeath unto the Methodist Home for Aged People of Washington, District of Columbia, and unto the Calvary Methodist Episcopal Church of Washington, District of Columbia, each the sum of Twenty Thousand ($20,000) Dollars.

"Fifth. I give and bequeath unto Lawrence M. Starbuck, Jr., and Elizabeth Starbuck, now residing with their parents Lawrence M. Starbuck, familiarly known as L. Macey Starbuck, and his wife, Marie Elizabeth Starbuck, of Brooklyn, New York, each the sum of $5,000.

"Should either of the said legatees predecease me, or die before coming into possession through administration of the legacy hereinbefore bequeathed to him or her in this the Fifth paragraph hereof, I give and bequeath to the survivor of them the legacy herein bequeathed to the deceased one."

Her residuary estate she devised and bequeathed as follows:

"Sixth. All the rest, residue and remainder of my estate of every kind and description, real and personal, wheresoever and howsoever situated, now owned or that may hereafter be acquired by me, I give, devise and bequeath unto Mary Elizabeth Whiteside, John Wilcox Whiteside, and Margaret Cary Whiteside, children of James L. and Delma W. Whiteside, absolutely and in fee simple, share and share alike."

So far as the record shows, Mrs. Behrens was not related to any of the individual legatees—general or residuary—either by consanguinity or affinity. She appointed Washington Loan & Trust Company, one of the appellees, as executor of her will. At the time of her death Mrs. Behrens owned certain miscellaneous property, specifically bequeathed, of the aggregate value of nearly $6,000 and other personal property not bequeathed or devised of the value of approximately $3,500. She owed debts of approximately the same amount. In addition to these assets, testatrix had an interest in a trust estate as follows: Her father was William H. Butler, who had died in 1902, leaving surviving his widow, Mary I. Butler, and his daughter, Jenna May Butler, who subsequently married and became May B. Behrens, the testatrix. By his will he created a trust to the Washington Loan & Trust Company for the benefit of his wife and daughter, as follows:

"In trust to take charge of, manage, control, invest, sell or mortgage the same or any part thereof, and the proceeds thereof to invest and re-invest for the best interests of my estate, and the income therefrom, after the payment of taxes, insurance, repairs and other necessary expenses incidental to the management of said estate, to divide into two (2) equal parts and to pay one part thereof, in monthly or quarterly installments, in its discretion, to my wife, Mary I. Butler, for and during the term of her natural life, and to pay the other part thereof to my daughter, Jenna May Butler, in the same manner, until she attains the age of fifty (50) years; but in the event of my said wife predeceasing my said daughter, my said Trustee shall pay the whole of the income from my said estate to my said daughter, Jenna May Butler, until she attains the age of fifty (50) years, at which time I hereby direct my said Trustee to pay over, transfer and deliver unto my said daughter, Jenna May Butler, or her heirs and assigns, the entire corpus of my estate then in its hands."

The trustee accepted the trust and administered it according to its terms. For eighteen years—from the death of the father to the death of the daughter—there was apparently an uneventful administration. A year and a half after the death of Mrs. Behrens the assets comprising the trust estate created by her father consisted of real estate valued at approximately $21,000 and cash in the amount of $131,749.21. In recognition of the right of Mrs. Behrens to dispose by will of one-half of this estate, an agreement was entered into between the trust company as trustee of the Butler estate and as executor of Mrs. Behrens' estate, on the one part, and Mrs. Butler, the widow and surviving life tenant of the other half of the Butler trust, whereby the trustee was authorized, first, to divide the cash and to sell the real estate and divide the proceeds into two parts, and, second, to pay one-half the cash and one-half the proceeds of the sale of the real estate to itself as executor of Mrs. Behrens' estate and to retain the other half of the cash and real estate under the Butler will for the benefit of the widow as life tenant according to the trust. As a result, the trust company as executor of the Behrens estate received the sum of $72,490.01 in cash, which enabled it to discharge Mrs. Behrens' indebtedness, pay the administration expenses, and have on hand a balance of $63,968.35 for distribu-

tion on the 20th day of October, 1921. Out of this the executor at once distributed to the legatees $61,250, of which $57,000 was designated as principal and $4,250 as interest. Thereafter and up to May 6, 1931, the trust company as executor made eleven partial distributions to the legatees, aggregating $23,867.80, making the total sum paid the legatees $85,117.80, of which the executor designated $69,551.70 as principal, and $15,566.10 as interest on unpaid balance of legacies from January 25, 1921, to March 16, 1927.

Mrs. Butler, the life tenant, died in 1936, and the remaining one-half of the corpus of the trust, in which she had a life estate, was distributed under the Butler will to the executor of Mrs. Behrens. Thus, at the time of filing the petition for instructions the executor had assets sufficient to discharge the unpaid portion of the legacies with interest and to leave—apparently—a considerable balance payable to the residuary legatees. The lower court held that interest was properly payable and directed appellee to distribute the balance of the estate accordingly.

The residuary legatees contend that because the executor was unable to pay in full the general legacies until it received the balance of the corpus of the Butler estate after the death of the life tenant, interest is not payable. They contend, moreover, that it must be presumed that Mrs. Behrens knew when she made her will that her estate was not sufficient to pay the general legacies in full, and hence she could not have intended that the general legacies should bear interest—at least not until the entire corpus of her father's estate came into her own estate.

■ The general rule is well settled that where a general legacy is given without assigning any time for payment or making provision for interest, it bears interest from the expiration of a year after the death of the testator, since at that time it becomes due and payable. The question for decision, therefore, is whether the legacies in this case are to be deemed due and payable at the end of a year from the testatrix's death so as to bear interest from that time according to the rule or whether payment is to be controlled by a disclosed testamentary intent, for the rule we have stated above has no application where the will, as a whole, interpreted in the light of the surrounding circumstances, discloses a purpose on the part of the testator as to the time of paying

legacies or as to the payment of interest thereon. Both sides here concede the correctness of the rule as well as the exception, so that we have to decide not, what is the law, but rather, whether the rule or the exception applies.

■ Appellants argue that Mrs. Behrens' will, considered as a whole and in the light of the surrounding circumstances, discloses an intent not to pay interest on general legacies. Contrarily, the general legatees argue that nowhere in the will can a testamentary intent on the question be found, even when viewed in the light of surrounding circumstances.

The rule applicable to the District of Columbia was stated by us in Caton v. American Security & Trust Co., 57 App. D.C. 279, 21 F.2d 381, 384. In that case we found in the will and in the surrounding circumstances sufficient evidence of testamentary intent to justify our saying that interest was not allowable. There the testator had made pecuniary bequests to his wife, relatives, and a friend. These legacies were directed by him to be paid as soon as possible with interest at 5 per cent. in the case of delay beyond a year. Other bequests were made to business associates and as to these no provision for interest was made. Moreover, the payment of these legacies was dependent upon the liquidation of certain stock holdings of the testator; and on this point he gave instructions that the executor should not sell the stock "until such time as an adequate price, as near as may be the par value thereof, can be obtained." The stock was depressed when testator died but, by following testator's directions, the executors sold it at a much higher price. The legatees as to whom no provision for the payment of interest was made contended they were entitled to interest from one year after testator's death. We held the contrary, saying on the basis of the facts outlined above:

"It thus becomes apparent that the testator, not only knew that the legacies in item eighteen could not be paid unless or until the stock was sold, but intended to provide and did provide that such payment should not be made until that time. There was no inadvertence in the failure of the testator to provide for the payment of interest on these deferred legacies, for his provision for the payment of interest on the legacies to his wife, relatives, and friend demonstrates that he had considered the question."

Appellants seek to identify the facts of the present case with the factual situation in the Caton Case and to have us apply the rule applied there, but we think there are marked dissimilarities. The Caton will spoke of interest as to some but not all legatees. The present will is silent throughout. In the Caton Case the testator appreciated the necessity for specific provisions as to interest in relation to the administration of his estate. In the instant case there is no intimation on the part of the testatrix that she anticipated any problems in connection with the payment of the legacies. It may be she assumed that the value of the real estate was greater than it turned out to be and on that basis thought that the half of her father's estate which she could on her death dispose of would pay the legacies in full. Or it may be that she supposed she would outlive her mother, attain the age of fifty years, and come into the full possession of the entire estate before she died. There are other differences between this and the Caton Case. There the legatees occupied various relationships to the testator—ranging from wife to business associates—and the intent to favor one legatee over the other was clearly apparent from the will. Here we find nothing in the will or in the surrounding circumstances to indicate that testatrix had more regard for one set of legatees than for the other. And all this tends to prove the unwisdom of speculation on the subject.

In the instant case the only thing that may be said with complete assurance is that there is nothing in the will which discloses an intent on the part of testatrix as to the date of payment of legacies or as to payment of interest, and without such intent disclosed somewhere within the will itself when interpreted in connection with the circumstances surrounding the testatrix at the time the will was made, it is obligatory upon us in the interest of uniformity to apply the rule. To do otherwise would in most cases require us to speculate as to testamentary intent, and this, we think, is not the province of the court. In saying this, we are not unmindful that there are border line cases which it seems might fall as well on the one side as on the other of the rule. This is illustrated by two cases decided by the Court of Appeals in New York.

In Wheeler v. Ruthven, 74 N.Y. 428, 30 Am.Rep. 315, the will gave twenty-one legacies and directed that if the testatrix' estate should be insufficient to pay all, the first fifteen should be first paid and the estate remaining applied pro rata to the rest. The only estate of the testatrix was a residuary interest in property subject to a life estate, and the life tenant survived the testatrix. Under those facts the New York court said that it was to be assumed that the testatrix understood the condition of her property and realized that until the death of the life tenant she or her representative would have nothing with which to pay the legacies she gave. And so on the ground that the testatrix could not have intended that the legacies should be paid immediately the court held that interest was not payable.

Some thirty years later in Matter of Rutherfurd, 196 N.Y. 311, 89 N.E. 820, the facts were that the testatrix died leaving a will by which she gave four general legacies to be paid in full before paying subsequent named legatees. Her residuary estate was given to her daughter in case she should survive her. At the time the will was made and at the time of her death testatrix was the owner of one-third of the principal of a trust fund under the will of her deceased husband subject, however, to the contingency of her daughter's leaving a descendant and also to the provision that the fund should be held intact and the income paid to herself and her daughter and the survivor of them. The daughter at the time the will was made was fifty-nine years of age, a widow, and childless. She survived the testatrix. The executors paid the first three legacies and a little more than a third of the fourth, and these payments consumed testatrix' entire estate except the interest in the principal of the trust fund. The daughter died without issue four years later, and the trust fund was paid over to testatrix' executor for distribution on the balance of the unpaid legacies. The question was whether these balances bore interest from one year after the death of the testatrix. In this case the New York court said that it did not find any clear indication in the will of an intention to postpone the payment of the legacies or to deprive the legatees of interest, and that only where it was entirely clear from the terms of the will that the payment was to be postponed was it proper to deny interest. The court sustained this holding on the ground that a legatee is in the same position as a creditor. In the Rutherfurd Case the testatrix had, apart from her contingent expectant interest in the estate of her husband, a sufficient estate of her own to pay a portion of the legacies. In the instant case the testatrix

had the right at her death to the immediate disposition of an estate sufficient to pay the greater part of the legacies and a vested estate in the balance of the trust fund subject only to the life estate of her mother. In the later New York case the court said that there was nothing in the will to indicate an intention that some of the legacies should be payable at one time and some at another or that the legacies should become due and payable by the executor as he received the assets of the estate. As we have shown, there is nothing in the will we are construing which would indicate expressly such an intention. Nor is there anything in the will which when viewed in the light of surrounding circumstances will indicate such intention. Hence there is no course open but to apply the undisputed general rule. that interest is payable from one year after the death of the testatrix. See, also, Lansburgh v. Lansburgh, 59 App.D.C. 201, 37 F.2d 997; Koon's & Wright's Appeal, 113 Pa. 621, 6 A. 377; Kent v. Dunham, 106 Mass. 586.

Second. In the calculation of the interest the proper rule is that stated in Story v. Livingston, 13 Pet. 359, 371, 10 L.Ed. 200, namely, the creditor should calculate interest whenever a payment is made. To this interest the payment is first to be applied; and if it exceeds the interest due, the balance is to be applied to diminish the principal. If the payment falls short of the interest, the balance of interest is not to be added to the principal so as to produce interest.

Affirmed.