**UNITED STATES**

**v.**

**SPEED QUEEN CORP.**

No. 10979.

United States Court of Appeals Seventh Circuit.

Feb. 10, 1954.

John W. Hughes, Chicago, Ill., Harold R. Burnstein, Chicago, Ill., for appellant.

Warren E. Burger, Asst. Atty. Gen., Frederick N. Curley, Atty., Civil Division, U. S. Department of Justice, Washington, D. C., Timothy T. Cronin, U. S. Atty., Howard W. Hilgendorf, Asst. U. S. Atty., Milwaukee, Wis., Melvin Richter, Washington, D. C., for appellee.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

This is an action brought by plaintiff, pursuant to Section 403(c) (2) of the Renegotiation Act, 50 U.S.C.A.Appendix, § 1191(c) (2), to recover excessive profits realized by the defendant during its fiscal year ending December 31, 1945. After answer by defendant, the court allowed plaintiff's motion for summary judgment and directed the parties to submit statements and authorities relative to the amount of the judgment. It appears that the principal amount due and owing by defendant as excess profits was the sum of $177,930.65. However, against this amount there were nine separate withholdings by plaintiff, totaling $43,951.80, for which amount defend-

ant was, without dispute, entitled to credit.

While other questions were previously involved, the sole issue presented to this court is, as stated in plaintiff's brief, whether "the amounts of money otherwise due appellant and properly withheld by the Government in liquidation of the renegotiation indebtedness be applied first to reduce the principal amount due or be applied first against interest accrued on the principal and the remainder towards reduction of the principal amount due." The defendant's position is that the amount of withholdings should first be applied against the principal indebtedness while that of the government is that they should first be applied against interest and only the remainder, if any, against the reduction of principal. The difference in these two methods of calculating the amount of the judgment is about $2,500.00.

The district court embraced the theory of calculation proposed by plaintiff. The court cited a number of cases (relied upon by plaintiff in this court), Story v. Livingston, 13 Pet. 359, 10 L. Ed. 200; Ohio Savings Bank & Trust Co. v. Willys Corp., 2 Cir., 8 F.2d 463, 44 A.L.R. 1162; Helvering v. Drier, 4 Cir., 79 F.2d 501; Whiteside v. Washington Loan & Trust Co., 68 App.D.C. 172, 95 F.2d 83; and Interstate Engineering Co., Inc., v. District of Columbia, etc., 72 App.D.C. 152, 112 F.2d 214, in support of the general proposition that a creditor is entitled to calculate interest whenever a payment is made, and that such payment is first to be applied to interest and any balance applied to diminish the principal. Relying upon this general rule, the district court in its opinion stated: "This court does not believe that the statutory language cited by the defendant can be construed to overcome a principle so long established, nor do the cases cited by the defendant justify a deviation from the rule prescribed in the Story case."

Defendant contends that this general rule is without application because the statute plainly and specifically provides

that the withholdings shall be credited against the principal (excessive profits). No case is cited and we know of none where the precise question has been decided. Plaintiff points out that this same procedure has been consistently followed by the government and should not now be overruled.

The question as to whether the government is entitled to interest on the amount of excessive profits determined and, if so, the rate which may be recovered, has been before the courts in a number of cases. We need refer, however, only to United States v. Edward Valves, Inc., 207 F.2d 329, a decision of this court, wherein the citation of other cases and authorities may be found. This court held that a Board regulation fixing the rate at 6% per annum was invalid because not authorized by Congress. We held, however, that interest was allowable at a fair rate "as a measure of damage for the delay in payment," that the rate of interest allowable was discretionary with the district court, its discretion to be based upon the record before it, and that interest at the rate of 4% was not an abuse of discretion.

Subsection (c) (2) provides that after the entry of an order determining excessive profits, "the Board shall forthwith authorize and direct the Secretaries or any of them to eliminate such excessive profits (A) by reductions in the amounts otherwise payable to the contractor under contracts with the Departments, or by other revision of their terms; or (B) by withholding from amounts otherwise due to the contractor any amount of such excessive profits * * *" (then follow other designated methods for the elimination of excessive profits not here material).

■ Thus, the language employed plainly directs only the elimination of "excessive profits," and one of the methods is by withholding amounts otherwise due the contractor. Plaintiff's theory, however, of applying the withholdings first to interest requires an amendment of the direction to an elimination

of "such excessive profits and interest." Since the courts have invalidated the Board's regulation fixing interest at the rate of 6%, the Board has no way of knowing at the time excessive profits are determined what rate of interest the government will be entitled to recover when it brings its action in court, and, even then, interest is allowable not as an element of the excessive profits owing by the contractor but as damages for the delay in payment. As previously shown, the rate of interest allowable is discretionary with the court, depending upon the record made in each case. If the Board's regulation fixing the rate of interest at 6% is void because unauthorized by statute, as has been held, it is not discernible how withholdings may be applied first to interest when the statute plainly requires their application to excessive profits (the principal amount owing).

Subsection (c) (2) contains a provision which further demonstrates the inconsistency of plaintiff's contention. It provides: "Upon the withholding of any amount of excessive profits or the crediting of any amount of excessive profits against amounts otherwise due a contractor, the Secretary shall certify the amount thereof to the Treasury and the appropriations of his Department shall be reduced by an amount equal to the amount so withheld or credited. The amount of such reductions shall be transferred to the surplus fund of the Treasury."

The uncertainty as to the rate of interest which the government might recover as damages for the delay in payment when and if an action for recovery is subsequently brought in court would appear to make it impossible for the Secretary to "certify the amount thereof to the Treasury." Interest calculated at that stage in the proceeding would be largely a matter of speculation. In any event, it would be so uncertain as to preclude the certification of an amount, as is required. We suspect that the procedure which we are advised "has been consistently followed" by the Secretary was initiated on the basis of its regulation fixing interest at the rate of 6%, which, of course, would permit the calculation of interest to a certainty. The invalidation of the regulation, however, has transformed what might have been definite and certain to that which is indefinite and uncertain. More than that, it has removed any basis for the contention that interest forms a part of the excessive profits recoverable as such but that it is only recoverable on the theory of damages for the delay in payment.

■ In our view, the provision in question is plain and unambiguous, it is not susceptible of interpretation. The government's theory, if embraced, would in reality require an amendment of the statute. This is not a court function. As was stated in Iselin v. United States, 270 U.S. 245, 251, 46 S.Ct. 248, 250, 70 L.Ed. 566, "What the government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function."

■ Thus, the cases relied upon by the district court (heretofore cited) are not relevant to the instant situation. Those cases are limited to situations where the creditor is entitled to calculate interest at the time payments are made. Here, the creditor (government) was not entitled to calculate interest at the time payments (withholdings) were made because the rate of interest to which it was entitled was not known at that time. Moreover, a general principle, no matter how long it has endured, can not overcome the plain mandatory requirements of a statute.

We conclude that the judgment appealed from was erroneously calculated, that the withholdings by the government should have first been applied to reduce the principal amount of the indebtedness (excessive profits). For the purpose of recalculation in conformity with this view, the judgment is

Reversed.