BRINKER et al. v. HUMPHRIES et al.

No. 11047.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 12, 1951.

Decided Jan. 31, 1952.

---

1. Fed.R.Crim.P., p. 131 (2d Prelim.Draft).

Ralph A. Ricketts, Washington, D. C., with whom Henry E. Manghum, Washington, D. C., was on the brief, for appellants.

Richard B. Kelley, Washington, D. C., for appellees.

Before WILBUR K. MILLER, BAZELON and WASHINGTON, Circuit Judges.

BAZELON, Circuit Judge.

In this case we are asked to decide whether assets from the sale of certain real property shall go to named legatees under the disputed provisions of a will or to the next of kin by intestacy. The trial court ruled in favor of appellees, the next of kin, and the legatees brought this appeal.

The real property in question was the subject of alternative provisions of the will. Paragraph Second stated that, in the event the testatrix should predecease her husband (who was an invalid) and he should continue disabled, it was her "sincere desire" and she therefore requested that her sister "make arrangements for his care during the remainder of his life, using for that purpose moneys which may be derived from the renting or leasing" of the real property. Paragraph Third conveyed this real property to the sister if she should survive the testatrix "subject, however, to a life estate in my said husband if he survive me." Paragraph Fourth conveyed the realty to the sister absolutely "in the event that my said husband shall predecease me." The next paragraph, Fifth, which is the subject of this dispute provides: "In the event that both my said husband and my said sister predecease me, *then I direct that the aforesaid real property be sold and the proceeds realized therefrom be distributed as follows * * *.*" (Italics supplied.) Those named are a friend, several second cousins, two grandsons of her husband, and a church, and constitute all of the appellants herein. Paragraph Sixth names the sister only as residuary legatee.

It is clear enough from all the provisions of the will that the testatrix' primary concern was for the welfare of her invalid husband. To that end she sought to preserve the real estate intact as a means of insuring his care and maintenance after her death. This purpose vanished, however, for shortly after the execution of the will the husband died. In 1945, the year following his death, she sold the real estate and deposited the net proceeds of $8,-988.83 to her credit in a bank account.

There is no dispute as to what became of this money. At her death in 1949, there remained from these funds $7,764.50 in stocks, bonds and cash. Of the difference, she had expended $854.44 "for her own purposes" and $369.89 "on account of her Civil Service Retirement and Disability Fund." In September 1946, more than a year after the real property was sold, the testatrix' sister died without issue. Her death rendered the residuary clause of the will inoperative and left appellants as the only remaining named objects of her testamentary bounty.

The parties' contentions, briefly, are these. The next of kin urge that testatrix intended the legatees to take only if they survived the husband and sister and if testatrix died possessed of the realty. The legatees, on the other hand, argue that testatrix intended them to take the proceeds whether or not she possessed the realty on her death, provided only that the husband and sister had predeceased her.

Our task, of course, is to ascertain and give effect to the testatrix' intent. In so doing, we must look at the entire will in the context of the problems faced by testatrix when she drew it. As we have already indicated, the testatrix' dominant purpose appears to have been to keep the property intact so long as income was required to assure the care and maintenance of her invalid husband. But she was also concerned for the welfare of her "beloved sister." To provide for both, she willed this property to her sister with a life estate to her husband, but to her sister absolutely in the event that her husband predeceased her sister. Then, in an apparent effort to envelop all the discernible contingencies within her then-existing horizon, she (1) made her sister the residuary legatee, and (2) added the disputed Fifth paragraph to take effect should testatrix survive both sister and husband. Laymen might well say that the testatrix intended to dispose of all her property under all the conditions she could then foresee. Not once, however, among all those mentioned specifically, did she mention the three next of kin who now claim that she intended them to take the bulk of her estate.

As so often happens, despite the seeming care and precision with which the will was drawn, the testatrix' basic purpose was subject to being frustrated by other unanticipated events, in addition to the one before us. First, if the sister had predeceased the testatrix and the invalid husband was still living at the testatrix' death, there would have been no express provision for him. Only by finding that the will created a trust with a life estate for the husband's benefit would a court have been able to protect him. And, second, if after the testatrix sold the property, she had predeceased her sister, the question of whether the proceeds would pass to the sister as residuary legatee or to the appellants under paragraph Fifth could have presented a problem of ademption similar to the one now before the court. These instances do not, however, cast doubt on testatrix' intent, for it could not have been reasonably urged in these cases that the testatrix intended anything other than that her invalid husband should be provided for as long as he lived and that upon his death her sister should take all her property. We do not, of course, decide these cases. We point them out merely as additional illustrations that this was an inartistically drawn will.

The testatrix having expressed her intent when she made her will, have subsequent events fashioned for her an intent different from that expressed by her words? It is true, as the next of kin urge, that the realty was sold after the husband's death. But that need not have caused testatrix any concern, for she might well have believed, consistent with her purpose to provide for the sister after the husband's death, that the sister would take the proceeds as residuary legatee.[1] Similarly, we find nothing either in the will or in the subsequent events to indicate that testatrix intended the proceeds to go by intestacy rather than by bequest in the event she

1. Such a belief would not mean that testatrix thought she had revoked the gift to the Fifth paragraph legatee. The legatees were to take only if they survived both the husband and the sister.

survived her husband and sister and sold the realty before her own death. Indeed, testatrix' care in isolating the proceeds from the sale of the realty lends supports to the view that her intention at the time of making the will was to give the proceeds to the legatees even though the property might have been sold before testatrix' death.[2]

Appellees urge upon us the well-known rule of law that testamentary gifts of specific assets are revoked if the assets are sold before the donor's death.[3] And, they say, cases in this jurisdiction support an interpretation that the gift to the legatees was specific. But we do not so read these cases.

▮ First, the cases referred to emphasize that, because the basic problem is to determine intent, one case will rarely serve as complete precedent for another. The principle of *stare decisis* is helpful in this field as an aid to analysis, rather than as a barrier to it. The doctrines laid down in the cases are ancillary to the guiding rule—that the testator's intent governs. Such doctrines must serve as the testator's handmaiden, not his scourge.[4] Second, considering the total combination of circumstances in these cases in the light of all the circumstances of the case before us, we do not find that they lead to the result sought by appellees. In Douglass v. Douglass, 1898, 13 App.D.C. 21, 22, the court found that the donor's intent in giving "ten thousand dollars in registered United States bonds, and ten thousand dollars in lawful money, the latter to be derived from my other property, not mentioned in the foregoing" was to give a specific legacy in bonds. This followed, the court said,

from the careful distinction made between the bonds and cash in view of the general scheme of the entire will and the clearly general gift of money coupled with the more specific gift of bonds.

In Plant v. Donaldson, 1912, 39 App.D.C. 162, the court found a gift of proceeds from the sale of realty owned by the donor when the will was executed to be specific. But there the gifts were of stated amounts of money and the only test applied by the court to determine intent was that had the proceeds from the realty proved insufficient to pay the stated sums bequeathed, the legatees could not have insisted that the deficiencies be made up from the residuary. Going beyond this test, it appears that when the legacy was considered revoked in the Plant case, the assets went to sisters, whom the donor had at least named as being within her contemplation. For those who then took were not only the residuary legatees, but had also been singled out in another provision of the will as objects of the donor's bounty. Here the next of kin, two uncles and an aunt, are complete strangers to the will. Moreover, as we have indicated, it is significant that testatrix here isolated the proceeds after she sold the realty.

▮▮ Presumptions of intent should be invoked only in the absence of an expression of such intent and ought not to be relied upon to defeat the discernible wishes of the testator, however imprecisely expressed. All the circumstances of the case before us indicate an intent that the legatees should take the proceeds even though testatrix did not own the realty when she died.

Reversed.

2. In some jurisdictions, it has been held that if property designated to be sold after death to pay certain legacies is instead sold by the testator during his lifetime and these proceeds can be traced and identified among the assets of the testator's estate, that constitutes one of the factors favoring a construction that the donor intended the legatees to take the proceeds, even though the property was sold before his death. See cases collected in 165 A.L.R. 1032, 1034–1041.

3. See cases collected in 57 Am.Jur. § 1582. General and demonstrative legacies are

generally held not to be adeemed in that fashion. Ibid. But the authorities are locked in conflict as to whether legacies to be paid from the proceeds of the sale of designated property after death are revoked by the sale of the property before death. See cases collected in 57 Am.Jur. § 1595 and 165 A.L.R. 1032.

4. See Baker v. National Savings & Trust Co., 1950, 86 U.S.App.D.C. 161, 181 F.2d 273; Plant v. Donaldson, 1912, 39 App.D.C. 162; Douglass v. Douglass, 1898, 13 App.D.C. 21.