**Michael WYMAN, et al., Appellants,**

v.

**Jerard W. ROESNER, et al., Appellees.**

**No. 80–472.**

District of Columbia Court of Appeals.

Argued Nov. 18, 1980.

Decided Dec. 30, 1981.

Rotraud M. Perry, Washington, D. C., for appellants.

John A. Kendrick, Washington, D. C., for appellees.

Before KERN, HARRIS, and FERREN, Associate Judges.

FERREN, Associate Judge:

The principal question in this case is whether a legacy of "the remainder due, if any," on a note was adeemed (extinguished) by payment of the note before the testator's death. We agree with the trial court that this gift is a specific bequest which could be lost through ademption. On the undisputed facts, moreover, we agree that the gift was adeemed—that there was no "remainder due" on the note on the date of the testator's death. Accordingly, we affirm summary judgment for appellees.

## I.

On October 23, 1970, Charlotte E. Kostick deeded to her nephew, the decedent Thomas F. Wyman, a residence at 4423 P Street, N.W., Washington, D. C. Kostick's sister, Ida Wyman, had raised her son, Thomas, and his three siblings in that house and continued to live there until her death on February 6, 1974.

After his mother's death, Thomas sold the house to John D. Phillips on November 20, 1974. Thomas took back a $45,000 note (guaranteed by a deed of trust) bearing interest at eight percent, with monthly payments scheduled to be paid until November 20, 1996. The printed note gave Phillips "the privilege of making larger payments in any amount," with a typewritten insert adding "at any time without penalty." Thomas endorsed the note over to the National Bank of Washington to hold for collection and to credit the payments to his checking account.

On May 13, 1977, Thomas executed a will. He left to one brother, appellant Michael C. Wyman, "the remainder due, if any, on that note being held by me for the sale of our family home at 4423 P Street, N.W., Washington, D. C. In the event that this amount is less than Ten Thousand dollars, he ... is to receive an amount of cash, either from bank deposits or sale of bonds to equal Ten Thousand dollars." Thomas bequeathed to

a second brother, appellant James A. Wyman, "the sum of Ten Thousand dollars, to come from cash in banks or sale of Bonds." He named as executor and remainderman his "long time friend and associate," appellee Jerard W. Roesner.

In September 1977, Phillips informed Thomas that he wished to pay off the note on the P Street house. An entry in Thomas' checkbook register reads "12–1–77 Deposit Payoff by John Phillip on P St $42,-388.24." The note itself showed final payments of principal and interest of $41,999.38 and $391.86, respectively, and was stamped "Paid Washington Collections Dec. 1, 1977 The National Bank of Wash. Washington, D. C." Thomas died of a heart attack at forty-eight years of age on December 6, 1977.

After admission of Thomas' will to probate, appellants, Thomas' surviving siblings, sued the remainderman and executor, appellee Roesner, and two other named beneficiaries, seeking construction of the will before approval of the final account. *See* Super.Ct. Probate R. 10(a). Appellants asked the court to "instruct the Executor whether the share of the estate of Michael Wyman is the assets from note on the family real property, $41,999.38 or $10,000.00 the minimum specified in [the will]." Appellees moved for summary judgment. After a hearing, the trial court granted the motion. The siblings timely noted their appeal. *See* D.C.Code 1973, § 11–721(a)(1); D.C.App.R. 4 II(a)(1).

## II.

■ Our standard of review is the same as the trial court's standard for initially considering the motion for summary judgment. *Turner v. American Motors General Corp.,* D.C.App., 392 A.2d 1005, 1006 (1978); *Burch v. Amsterdam Corp.,* D.C.App., 366 A.2d 1079, 1083–84 (1976). A court shall grant summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Super.Ct.Civ.R. 56(c); *see* Super.Ct.Probate R. 10(a). The moving party has the burden of

demonstrating the absence of a material factual dispute, *Turner, supra* at 1006; *Willis v. Cheek,* D.C.App., 387 A.2d 716, 719 (1978); *Burch, supra* at 1084, and entitlement to judgment as a matter of law. *Id.* Once the movant has made a prima facie showing, however, the opposing party, to prevail, must rebut with specific evidence. *See Willis v. Cheek, supra* at 719; Super.Ct. Civ.R. 56(e).

■ In determining whether an issue of fact exists, the court considers the pleadings and all other material of record. *Turner, supra* at 1006; *Stevens v. Hall,* D.C. App., 391 A.2d 792, 794 (1978); *Burch, supra* at 1083–84. The court must resolve any doubt against the movant, *Turner, supra* at 1006; *Stevens, supra* at 794; *Willis v. Cheek, supra* at 719, and should grant summary judgment "sparingly in cases involving motive or intent." *Willis v. Cheek, supra* at 719.

## III.

In applying these principles we consider, first, the nature of the bequest to Michael Wyman of "the remainder due, if any," on the deed of trust note. Appellants contend that Thomas intended Michael to inherit the proceeds of the final payment on the note— $41,999.38—even if Phillips made that payment before Thomas' death. To the contrary, we agree with the trial court that the undisputed material facts show the gift was a "specific" bequest of any balance due on the note at the time of Thomas' death (with a contingent "general" legacy of up to $10,-000), not a bequest of the proceeds from the final payment.

■ A. The common law divides legacies into four classes: specific, demonstrative, general, and residuary. *See generally* 6 W. Bowe & D. Parker, Page on Wills § 48.1 (rev. ed. 1962 & Supp. 1980–81). A specific bequest is a legacy of a particular, designated asset that only the delivery of that asset can satisfy. *Kenaday v. Sinnott,* 179 U.S. 606, 618–20, 21 S.Ct. 233, 237–38, 45 L.Ed. 339 (1900); *Lansburgh v. Lansburgh,* 59 App.D.C. 201, 206, 37 F.2d 997,

1002 (1930); *Plant v. Donaldson*, 39 App. D.C. 162, 165 (1912); *Douglass v. Douglass*, 13 App.D.C. 21, 26 (1898), *appeal dismissed by stipulation* 20 S.Ct. 1024, 44 L.Ed. 1220 (1900). *See generally* 6 W. Bowe & D. Parker, *supra* §§ 48.3–.6. A demonstrative legacy, by contrast, is a gift of a stated value that identifies a particular asset as the primary source for payment but permits the executor to draw on the general assets of the estate once the primary source has been exhausted. *Kenaday, supra*, 179 U.S. at 618–20, 21 S.Ct. at 237–38; *Armstead v. Union Trust Co.*, 61 App.D.C. 269, 270, 61 F.2d 677, 678 (1932); *Lansburgh, supra* at 206, 37 F.2d at 1002; *Plant, supra* at 165; *Douglass, supra* at 26–27. *See generally* 6 W. Bowe & D. Parker, *supra* § 48.7. A general legacy is a gift payable from the assets of the estate without a claim on any particular source. *Kenaday, supra*, 179 U.S. at 618–20, 21 S.Ct. at 237–38; *Armstead, supra* at 270, 61 F.2d at 678. *See generally* 6 W. Bowe & D. Parker, *supra* § 48.7. A residuary bequest disposes of the remainder of the estate after all debtors have been paid and all other legacies satisfied. *See generally id.* § 48.10.

 Courts disfavor specific bequests, for if the designated property is not part of the estate at death, the gift generally will be lost through ademption by extinction. *Kenaday, supra*, 179 U.S. at 619, 21 S.Ct. at 238; *Vogel v. Saunders*, 68 App.D.C. 31, 33, 92 F.2d 984, 986 (1937). *See generally* 6 W. Bowe & D. Parker, *supra* §§ 48.8, 54.3–.20. Courts will characterize a legacy as specific, therefore, only if the will clearly expresses that intention. *Kenaday, supra*, 179 U.S. at 618, 21 S.Ct. at 237; *Vogel, supra* at 33, 92 F.2d at 986; *Plant, supra* at 165; *Douglass, supra* at 28. *See generally* 6 W. Bowe & D. Parker, *supra* § 48.8. Even if a bequest is specific, moreover, the will may evince an intent that if the property is sold before the testator's death, the specific legatee should inherit the proceeds. *Dean v. Tusculum College*, 90 U.S.App.D.C. 304, 305, 195 F.2d 796, 797 (1952); *see Brinker v. Humphries*, 90 U.S.App.D.C. 180, 183, 194 F.2d 350, 353 (1952). *See generally* 6 W. Bowe & D. Parker, *supra* § 54.9. *See also Kaiser v.*

*Brandenburg*, 16 App.D.C. 310, 314–16 (1900) (will's command that specific assets be sold and the proceeds divided among certain legatees is specific legacy).

 In construing a will, the testator's intent is the guiding principle—the "polestar." *In re Estate of Kerr*, 139 U.S. App.D.C. 321, 331, 433 F.2d 479, 489 (1970); *accord, Brinker, supra* at 182, 194 F.2d at 353; *Baker v. National Savings & Trust Co.*, 86 U.S.App.D.C. 161, 162, 181 F.2d 273, 274 (1950). A court looks at the entire will to discern this intent. *Brinker, supra* at 181, 194 F.2d at 352; *Douglass, supra* at 27. If the intent is manifest in the language of the will, the inquiry ends there. *Baker, supra* at 162, 181 F.2d at 274. If the language "upon its face and without explanation, is doubtful or meaningless," however, a court may examine extrinsic evidence in order to understand the will. *Id.; accord, Starkey v. District of Columbia*, D.C.App., 377 A.2d 382, 383 (1977); *Kerr, supra* at 331–32, 433 F.2d at 489–90. *See generally* 4 W. Bowe & D. Parker, Page on Wills § 32.1–.14 (rev. ed. 1961 & Supp. 1980–81). Because the intent of each testator, manifested in the will, is unique, prior cases are instructive but rarely controlling. *Brinker, supra* at 183, 194 F.2d at 353; *Plant, supra* at 165; *Douglass, supra* at 27.

██ B. In order to determine the nature of the bequest to Michael Wyman, we begin with the undisputed language of the will. Article II(B)(1) provides in full:

To Michael C. Wyman (Brother) or in his demise his wife, Nancy, the remainder due, if any, on a note being held by me for the sale of our family home at 4423 P Street, N.W. Washington, D. C. In the event that this amount is less than Ten Thousand dollars, he or she is to receive an amount of cash, either from bank deposits or sale of bonds to equal Ten Thousand dollars.

The meaning of this provision is clear. It makes a specific bequest to Michael of the balance due, if any, on the note at the time of Thomas' death. If, for any reason, that balance is less than $10,000, Michael re-

ceives cash from other sources—a contingent general legacy—in the sum required to make the inheritance equal $10,000, the same amount as his brother James' inheritance.[1]

The bequest of "the remainder due, if any," on the note is specific because it ties the gift to the existence of the note and to the balance due on the note at Thomas' death, whatever the amount.[2] Thomas apparently understood that the remainder due on the note at his death might be small, for he provided in that case for Michael to receive a general legacy of up to $10,000.[3]

Appellants, however, rely on *Brinker, supra,* in an effort to show that Thomas intended Michael to inherit the proceeds from the final payment on the note. In *Brinker,* the testatrix directed that certain "real property be sold and the proceeds realized therefrom be distributed" to named legatees. *Id.* at 181, 194 F.2d at 351. However, she sold the real estate before her death and did not provide expressly in the will for the disposition of the proceeds in those circumstances. *Id.* at 181–82, 194 F.2d at 351–52. In attempting to surmise her intent in this unforeseen situation, the court noted that the testatrix had isolated the proceeds in a separate account. *Id.* at 183, 194 F.2d at 353. Moreover, the alternative to inheritance by the named legatees was inheritance (through intestacy) by "strangers to the will." *Id.* Under these circumstances, the court perceived an intent for the legatees to inherit the proceeds of the sale of the real estate, even though the sale had occurred before rather than after the testatrix's death. *Id.*

*Brinker* presents an exception to the rule that elimination of a specifically

1. Appellants urge that, going beyond this particular provision, the will as a whole evinces a "general scheme" of the testator "to leave what came from his family back to his family." For that reason, they say, the will indicates Thomas' intent that Michael receive the amount of Phillips' final payment on the note. We see no such plan in the language of the will. Thomas bequeathed to Michael not only "the remainder due, if any," on the note from "the sale of our family home" but also personal property "deemed to have belonged to [their] mother . . . to keep or distribute among other members of the family as he . . . sees fit." In contrast, the will leaves only a cash bequest to brother James and no legacy at all to Thomas' third brother, Donald, or to his sister, Beatrice. The will moreover, leaves substantial property to friends: Thomas' interest in certain real property and specified personal property to one "Friend and Associate," two cash bequests to two other "long time friends and associates," and—to executor Roesner—certain real property, personal belongings (to "keep or judiciously disburse to friends or relatives as he sees fit"), and the residue of the estate. On its face, therefore, the will reveals no pattern of directing family property back to the family.

In addition to arguing from the language of the will, appellants sought to introduce extrinsic evidence in support of their theory. Specifically, appellants offered evidence that Thomas had been devoted to his family, that Phillips had paid off the note for his own personal reasons contrary to Thomas' wishes, and that Thomas had had an appointment with his stockbroker on the day of his death to discuss investment of the proceeds from the final payment on the note. Such extrinsic evidence, however, is inadmissible given the straightforward language of the will. *See Baker, supra* at 162, 181 F.2d at 274. *See generally* 4 W. Bowe & D. Parker, *supra* §§ 32.1–.14. The trial court properly declined to consider appellants' proffer of that evidence in ruling on the motion for summary judgment.

2. *See Bigoness v. Anderson,* 106 F.Supp. 986, 988 (D.D.C.1952) (bequest of balance of money in banks, "together with all my second trust notes, notes receivable, and other securities" held specific); *Lange v. Lange,* 127 N.J.Eq. 315, 319–20, 12 A.2d 840, 843 (Ch. 1940) (when testatrix left niece $4,000 mortgage, or mortgage balance at death plus cash to equal $4,000, bequest of mortgage held specific and gift of cash held a contingent general legacy); *but cf. Kenaday, supra,* 179 U.S. at 620–21, 21 S.Ct. at 238 (when testator's general intent was to leave all property to wife except when he otherwise specifically bequeathed, legacy of $10,000 bank balance held demonstrative); *Maxim v. Maxim,* 129 Me. 349, 357–58, 152 A. 268, 269, 272 (1930) (when testator indicated existence of $6,000 note and "out of this said amount" bequeathed stated sums to named persons, legacies held demonstrative).

3. *See Vogel, supra* at 33, 92 F.2d at 986 (when testator otherwise provided for legatee in will, bequest of fourteen shares of AT&T stock held specific); *Lange, supra* at 319–20, 12 A.2d at 843 (when testatrix left niece $4,000 mortgage or mortgage balance at death plus cash to equal $4,000, bequest of mortgage held specific).

bequeathed asset from the testator's estate before death results in ademption. It stands for the proposition that a testator may be understood to have intended that the proceeds from the disposition of a specifically bequeathed asset be substituted for the original bequest—a transmutation of one specific gift into another. If the will evinces such an intent, the bequest will not be adeemed. *See Dean, supra* at 305, 195 F.2d at 797. *See generally* 6 W. Bowe & D. Parker, *supra* § 54.9. This exception does not apply to the present case. Unlike the will in *Brinker*, Thomas' will makes no reference to inheritance by Michael of the proceeds of the deed of trust note in any circumstances. Rather, the will provides for Michael to inherit "the remainder due, if any," on the note at Thomas' death and makes an alternative bequest of up to $10,000 if the balance should fall below that amount (either because monthly payments gradually had reduced the balance due on the note or because Phillips had exercised his right to prepay). The language of this will—unlike the will in *Brinker*—thus provides for the circumstances that existed at the time of the testator's death.[4]

In summary, we hold that the undisputed language of Thomas' will, leaving to his brother Michael "the remainder due, if any," on the deed of trust note from the sale of 4423 P Street, constitutes a specific bequest as a matter of law.

## IV.

We turn to the question whether the early payment of the note adeemed the bequest of the remainder due on the note. More specifically, we must consider (1) whether an act by the testator himself—not merely by a third party—is required to adeem a specific bequest and, if not, (2)

whether there was a "remainder due" on the note at the time of Thomas' death.

A. Appellants contend that only a voluntary act of the testator—not an action by another—can adeem a specific bequest. Accordingly, they say, because Phillips initiated repayment of the note (allegedly contrary to Thomas' wishes), that payment did not adeem the bequest to Michael. We disagree.

As the doctrine of ademption has developed, courts have been less and less inclined to reconstruct the testator's intent; increasingly, they have relied on a rule that the absence of a specifically bequeathed asset from the estate extinguishes the gift. "In the earlier cases, ademption by extinction was held to destroy the gift, because the facts which worked such extinction showed that testator had changed his mind and did not intend to bequeath the property to the legatee." 6 W. Bowe & D. Parker, *supra* § 54.14 at 265 (footnote omitted). Thus, focusing on the testator's intent, some courts took the position, advocated by appellants, that "a voluntary payment by the debtor would not adeem a specific bequest of the debt, but the testator's act in enforcing payment operated as an ademption." *Id.* at 266 (footnote omitted).

The modern view of ademption, however, does not explore intent. If the specifically bequeathed item is not part of the estate, the bequest generally fails. *Id.* § 54.15, at 266. The Supreme Court explained this approach at the turn of the century in *Kenaday, supra*:

> [T]he ademption of a specific legacy is effected by the extinction of the thing or fund bequeathed, and the intention that the legacy should fail is presumed. At least a different intention in that regard

---

4. Appellants argue, alternatively, that the gift of "the remainder due, if any" is a demonstrative legacy. We disagree. The will makes no reference to a stated sum to be paid to Michael *out of* the proceeds of the note. *Compare Kenaday, supra*, 179 U.S. at 620–21, 21 S.Ct. at 238; *Maxim, supra*, 129 Me. at 351–52, 357–58, 152 A. at 269, 272. Moreover, the will gives no

indication of any date except the date of death on which to calculate the "remainder due" for purposes of the bequest. If the balance then is less than $10,000, Michael is to receive cash from other sources—but only to make the legacy equal $10,000, not the $41,399.38 that appellants claim.

which is not expressed will not be implied, although the attention which is expressed relates to something which has ceased to exist. [*Id.* 179 U.S. at 617–18, 21 S.Ct. at 237.]

Like many other jurisdictions, *see* 6 W. Bowe & D. Parker, *supra* § 54.15, at 266 & n.2, the District of Columbia has adhered to this view. *See Dean, supra* at 305, 195 F.2d at 797. Under this approach, if the testator specifically has bequeathed a debt and the debtor pays off the debt before the testator's death, the bequest fails regardless of the testator's intent or the testator's role in the liquidation of the debt. *E.g., Willis v. Barrow,* 218 Ala. 549, 552, 119 So. 678, 680 (1929); *Succession of Batchelor,* 48 La.Ann. 278, 280–81, 19 So. 283, 284 (1896); *Ford v. Ford,* 23 N.H. 212, 218 (1851). *See* 6 W. Bowe & D. Parker, *supra* § 54.6, at 251 & n.8, § 54.15, at 267 & n.5.[5]

A specific legatee may invoke one established exception to the operation of this doctrine. Ademption will not occur "where, as in [*Brinker, supra*], the intention of the testator, as drawn from the will, clearly indicates that if the devised property be sold during testator's lifetime, the proceeds are to stand in its place ...." *Dean, supra* at 305, 195 F.2d at 797; *See* Part III.A. *supra.* As indicated in Part III.B., *supra,* however, the language of Thomas Wyman's will, leaving his brother "the remainder due, if any," on the note, does not bring this specific bequest within the exception. Whether the bequest was adeemed, therefore, depends on whether there was a "remainder due" on the note at the time of Thomas' death.

■ B. In order to determine whether there was a "remainder due" on the note at Thomas' death, we must consider more specifically what Thomas meant by that phrase.[6] The trial court translated the question to be whether Phillips had been discharged from liability on the note by the time of Thomas' death. We agree. Therefore, in order to sustain summary judgment on the ground that Phillips' liability had been discharged, appellees must have presented undisputed facts showing that Phillips had paid the "remainder due" on the note by that time. We conclude that the undisputed facts sustain this judgment.

5. Some commentators have criticized the prevailing view of ademption, *see, e.g.,* Note, *Ademption and the Testator's Intent,* 74 Harv. L.Rev. 741 (1961), and some states have enacted statutes to limit the doctrine. *See generally id.* at 751 & n. 60; 6 W. Bowe & D. Parker, *supra* § 54.20. Although the precedents of *Kenaday, supra,* and *Dean, supra,* bind us, we also believe that sound reasons support their approach. In many cases where a specifically bequeathed item is absent from the estate, it is difficult—if not impossible—to determine the testator's intent. Because the testator often will have failed to foresee the eventuality that has come to pass, the court could be engaged in a futile effort to surmise an intent that the testator never had. The acceptance of extrinsic evidence such as testimony regarding the testator's oral declarations of intent would undermine the formalities of writing and execution established to avoid the possibility of perjury. *See* D.C.Code 1973, § 18–103. *See generally* 6 W. Bowe & D. Parker, *supra* § 54.15, at 266. We therefore have no reluctance to follow the rule of *Kenaday* and *Dean.*

In support of their theory that ademption requires a voluntary act of the testator, appellants rely heavily on *Green v. St. Luke's Hospital,* D.C.Super.Ct., Civ. No. 10197–73 (Nov. 22, 1974), 102 Daily Wash.L.Rep. 2397. The court there stated, "All the reported cases in the District of Columbia considering ademption have dealt with factual situations where the extinction of the res resulted from the act of a competent testator." *Id.* at 2401–02. The court held, however, that a specific bequest is not necessarily adeemed if, as in that case, the testator has become *incompetent* since writing his will and the conservator has disposed of the designated asset. *See id.* at 2402. This position (which we do not rule on here) accords with the widespread reluctance of courts to apply the doctrine of ademption to the estate of a testator since becoming incompetent. *See generally* 6 W. Bowe & D. Parker, *supra* § 54.18. *Green* cannot be read for the proposition that, in general, ademption requires an affirmative act of a testator, for such a rule would be inconsistent with the law announced in *Kenaday* and *Dean.*

6. When the trial court rests its interpretation solely on the language of the will, this court considers the meaning of the will de novo. *In re Estate of Wiley,* D.C.App., 331 A.2d 343, 345 (1975).

There is strong evidence indicating that the bank received final payment before Thomas' death on December 6, 1977. More specifically, we refer to the following undisputed facts: (1) a stamp reading "Paid Washington Collections Dec. 1, 1977 The National Bank of Wash. Washington, D. C." appears on the deed of trust note;[7] (2) Thomas Wyman's checkbook contains a notation reading "12–1–77 Deposit Pay off by John Phillip on P St. $42,388.24," between an entry dated December 4 and another entry dated December 5; and (3) at some point in time, the bank credited the proceeds from the final payment on the note to Thomas' checking account.[8] Appellants

---

7. A bank stamp marking a note "paid" is *prima facie* evidence of payment and discharge. *See First National Bank v. Taylor*, 488 P.2d 1026, 1031 (Alaska 1971); *Continental Gin Co. v. Benton*, 104 Ark. 367, 369–70, 149 S.W. 528, 529 (1912); *Household Finance Co. v. Watson*, 522 S.W.2d 111, 114 n.1 (Mo.Ct.App.1975).

8. In the motion for summary judgment, appellees included the following statement in their recitation of material facts as to which there is no genuine issue.

> On or about 1 December 1977 the balance due on the note owned by the decedent was deposited in the decedent's bank account with the National Bank of Washington. Decedent noted in his checkbook register that it was the "Payoff by John Phillip (sic) on P St." The note in question was cancelled and marked "Paid" by the bank holding it for collection, but not signed by the testator. A Deed of Release had not been executed by the date of decedent's death on 6 December 1977.

Appellees supported this statement with a copy of Thomas' checkbook register and a copy of the deed of trust note. They did not submit a copy of the instrument of payment.

In their opposition, appellants denied these allegations but did not include in their own statement of genuine issues any specific disputed facts material to the question of the payment of the note. More importantly, appellants provided no evidence that the documents were inauthentic or irregular in any way. Appellants' bare denial is insufficient to raise a genuine issue of material fact. *See Willis v. Cheek, supra* at 719; Super.Ct.Civ.R. 56(e). The trial court therefore properly decided the motion for summary judgment on the basis of the documents, presented by appellees, and we review the judgment on the same factual predicate.

---

failed to make any specific showing of irregularity in cancellation or delay in collection that might have rebutted appellees' case. *See* note 8 *supra*.[9] In the absence of any rebuttal, appellees presented adequate proof that there was no "remainder due" on the note at the time of Thomas' death and that the specific bequest to Michael accordingly was adeemed.[10]

## V.

In summary, we hold that the bequest of "the remainder due, if any," on the deed of trust note was a specific legacy. We conclude that the law of this jurisdic-

---

9. *Compare K. & S. International, Inc. v. Howard*, 249 Ark. 901, 902, 462 S.W.2d 458, 459 (1971) (court erred in granting summary judgment for buyer on theory that bank stamp "paid" discharged buyer's obligation on note where note was paid by seller after buyer defaulted); *Citizens Fidelity Bank & Trust Co. v. Stark*, 431 S.W.2d 722, 724 (Ky.App.1968) ("Paid" stamp did not discharge note where cancellation induced by fraud); *Pentagon Federal Credit Union v. Edwards*, 571 S.W.2d 679, 682 (Mo.App.1978) (cancellation "made unintentionally, or under a mistake or without the authority of the holder does not discharge the debtor"); *Tassock v. Hogan*, 272 Or. 694, 698, 538 P.2d 910, 913 (1975) (en banc) (plaintiff introduced sufficient evidence "to overcome any inference of payment which was raised by the scratched out words, 'Paid in Full'").

10. Both the fact that Thomas did not personally cancel the note and the fact that the trustees did not release the deed of trust before Thomas' death are irrelevant. As the holder of the note for collection, the National Bank of Washington had authority to release Phillips from liability. *See Russell v. Maxson Sales Co.*, 591 P.2d 703, 705–06 (Okl.1979); D.C.Code 1973, §§ 28:3–301, –601, –603. *See generally* J. White & R. Summers, Uniform Commercial Code § 13–18 (2d ed. 1980); 2 U.C.C. (U.L.A.), *supra* § 3–601, –603.

Because a deed of trust is merely security for the debt, *Yasuna v. Miller*, D.C.App., 399 A.2d 68, 71–72 (1979), its release is not germane to whether the "remainder due" on the note has been paid. In any event, payment of the debt immediately extinguishes the deed of trust. *Maynard v. Sutherland*, 114 U.S.App.D.C. 169, 175, 313 F.2d 560, 566 (1962); *W. A. H. Church, Inc. v. Holmes*, 60 App.D.C. 27, 29, 46 F.2d 608, 610 (1931); *Wood v. Grayson*, 22 App.D.C. 432, 446 (1903), *appeal dismissed*, 200 U.S. 257, 26 S.Ct. 240, 50 L.Ed. 470 (1906).

tion establishes a general rule, applicable in this case, that the absence of the subject of a specific bequest from the testator's estate adeems the bequest. On the basis of undisputed facts, we further conclude that the trial court correctly granted summary judgment for appellees on the ground that Phillips had paid the "remainder due" on the deed of trust note—and thus adeemed the bequest of that note to Michael Wyman—

before Thomas Wyman died on December 6, 1977.[11]

*Affirmed.*

11. In addition to granting summary judgment in favor of appellees on the central issue of this case—construction of Article II(B)(1) of the will—the trial court granted summary judgment in their favor on the interpretation of Article II(B)(2). That clause provides: "He or She [Michael or Nancy Wyman] is also to receive all personal items deemed to have belonged to our mother, as decided by the executor, to keep or distribute among other members of the family as he or she sees fit." We agree with the trial court's interpretation of this clause.

As a preliminary matter, appellants question the propriety of the trial court's ruling on Article II(B)(2). In their complaint, however, appellants requested interpretation of all of Article II. Appellees' request for summary judgment and the trial court's interpretation of Article II(B)(2) was therefore proper. *See* Super. Ct.Civ.R. 56(b).

While contesting the propriety of the ruling on Article II(B)(2), appellants challenge the trial court's decision not to order an immediate distribution of the personal property which the executor already has acknowledged belonged to Ida Wyman. Appellants, however, sued only for construction of the will, and the trial court acted within its discretion in denying appellants' motion "to amend the complaint to reflect the issue of the distribution of the personalty." *See Blake Construction Co. v. Alliance Plumbing & Heating Co.,* D.C.App., 388 A.2d 1217, 1220 (1978), *cert. denied,* 440 U.S. 911, 99 S.Ct. 1223, 59 L.Ed.2d 460 (1979); Super.Ct. Civ.R. 15(a).

As to the merits, the parties dispute no issue of fact material to the construction of this clause. Both rely only on the language of the will. We agree with the trial court's and appellees' interpretation of this provision: the executor has discretion to determine which items belonged to testator's mother. The executor, of course, must make these decisions in good faith. *See Colton v. Colton,* 127 U.S. 300, 319–21, 8 S.Ct. 1164, 1173–74, 32 L.Ed. 138 (1888). If appellants wish to contest these determinations, they may do so in a challenge to the account or otherwise.