Celeste JOHNSTON, et al., Appellants,

v.

ESTATE OF Genevieve I. WHEELER, et al., Appellees.

Nos. 97–PR–851, 97–PR–903.

District of Columbia Court of Appeals.

Argued Oct. 6, 1999.
Decided Feb. 17, 2000.

Roy I. Niedermayer, Washington, DC, for appellants Celeste Johnston, Celeste Wellington and Chryssie Morris.

Thomas A. Mauro for appellant Michael O'Sullivan.

Charles N. Brower, Washington, DC, for appellee Jasmin Ponti.

Before STEADMAN, GLICKMAN and WASHINGTON, Associate Judges.

GLICKMAN, Associate Judge:

The legatees of a specific bequest in the will of Genevieve I. Wheeler appeal from a decision of the probate court that the bequest failed by ademption, the doctrine that a legacy of a specific asset is extinguished if the asset no longer exists at the time of the testator's death. The question presented is whether Wheeler's bequest of her investments under a retirement plan offered by her employer adeemed because, upon her retirement, she "rolled over" those investments into an Individual Retirement Account (IRA) without revising the terms of her will to reflect the rollover. The probate court held that the rollover extinguished the specific bequest, leaving the IRA to be distributed to the residuary legatees. We reverse. We hold that the rollover did not trigger ademption.

## FACTS[1]

Genevieve I. Wheeler died testate on March 25, 1996. In her will of October 8, 1994, Wheeler sought to dispose of her estate through a series of specific devises and bequests. In addition to making gifts of her home, other real estate, and the funds in three specifically identified bank accounts, Wheeler bequeathed "any rights and interest in my pension from Quota International, Inc." (her then employer) to her sister-in-law Celeste Johnson, her nieces Chryssie Morris and Celeste Wellington, and her parish priest Father Michael P. O'Sullivan.[2] The will contains a residuary clause bequeathing all the remainder of her property to three friends, Mary Jo Daugherty, Romellia Johnston and appellee Jasmin Ponti.[3] Each of the

1. This case comes to us, as it was presented to the probate court, on a rather sparse record, consisting essentially of the will, exhibits submitted by the personal representative, and those relatively few surrounding facts as to which there was no dispute. The factual summary in this opinion is correspondingly spare. We deem it adequate, however, to resolve the issue before us.

2. Article VIII of the will states:

I give, devise, and bequeath my house and land at 214 8th St., SE, Washington, D.C., to my friend, Romellia Johnston, now residing at 614 C Street, SE, Washington, D.C. I also give Romelia Johnston half the money in my Crestar Bank chequing [sic] account.

I give my land in Virginia (seven acres near Edinburgh) and the buildings on it to Saint Peter's Parish Endowment Trust Fund, of Saint Peter's Parish located 313 Second Street, SE, Washington, D.C.

I give Mary Jo Daugherty, of 210 8th Street, SE, the other half of the money in my Crestar Bank chequing account.

I give Jasmin Ponti of 229 9th Street, SE, the funds remaining in my Crestar Bank Savings Account.

I give the funds in my Crestar Bank Money Market Account to Ms. Sarah Dew, who works at my house on Saturdays.

I give ⅓ of any rights and interest in my pension from Quota International, Inc. to my sister-in-law Celeste Wellington of Sandbridge, Va. ⅓ to Fr. Michael P. O'Sullivan of St. Peter's R.C. Church, and ⅙ each to my nieces, Celeste Johnson, and Chrissie Wellington.

3. Article IX, the residuary clause of the will, states: "All the rest, residue and remainder of my property and estate of whatsoever character, whensoever acquired and wheresoever situated, and to which I or my estate may be in any manner entitled at the time of my death, including any property or estate as to which I may have the power of disposition or appointment (all said property and estate being hereinafter referred to as my 'residuary estate'), shall be disposed of as follows: I give my residuary estate in fee simple absolute to my friends, Mary Jo Daugherty, Jasmin Ponti, and Romellia Johnston, in equal part."

residuary legatees is also the beneficiary of a specific gift in the will.[4]

Extrinsic evidence established, and it is undisputed, that when Wheeler prepared her will, her "pension from Quota" consisted of her accumulated investments made pursuant to a "defined contribution retirement plan" offered to employees of Quota by the American Society of Association Executives (ASAE). The ASAE plan was administered by Fidelity Investments. The trustee of the ASAE plan was subject to change from time to time; initially the trustee was Citizens Bank of Maryland, but later Fidelity Investments replaced Citizens Bank as trustee. Wheeler was 100% vested in the plan. Thus the term "pension from Quota" is somewhat misleading, for it appears Quota had no control over the funds that it contributed and had no obligation itself to pay or otherwise fund a pension to Wheeler after she retired. Quota was merely the original source of the monies that were contributed (*e.g.*, by Quota directly or by Wheeler as a deduction from her pay) and invested with Fidelity for Wheeler's retirement.

Shortly after she made her will, Wheeler retired, and in April 1995 she undertook to transfer her Fidelity investments under the ASAE plan into a rollover Individual Retirement Account (IRA) at Crestar Bank. Wheeler completed this transfer in early August 1995. The record indicates that at this time Wheeler's Fidelity investments totaled $164,305.60, almost all of which was in a "fixed income option," with a small balance in a "disciplined equity" fund. The entire amount was withdrawn. A small after-tax portion amounting to $2,245.45 was distributed directly to Wheeler; all the rest, totaling $162,060.15, was deemed "eligible for rollover" and transferred directly to the Crestar Bank IRA. In the IRA this money was allocated among several bond, equity or cash funds.

Wheeler did not amend the provisions of her will to reflect this rollover, and she did not designate beneficiaries of the IRA when she opened the account at Crestar or at any point thereafter. Upon her death in March 1996, the bulk of the transferred funds, totaling $157,101.51, were still intact in the IRA.

In the probate court, the personal representative of the estate sought judicial authorization to distribute Wheeler's IRA funds (subject to payment of income tax) to appellants, the persons named in the will as legatees of the "pension from Quota." Appellants likewise asked the probate court to declare them entitled to receive the IRA funds.

Appellee Jasmin Ponti, one of the three residual legatees, opposed these requests. (The other residuary legatees took no position.) Ponti contended that Wheeler had terminated the existence of her "pension from Quota" prior to her death when she transferred her retirement funds from the Fidelity investments under the ASAE retirement plan into the rollover IRA. Arguing that the IRA was not the same asset as the "pension from Quota," and hence not the subject of any specific bequest in the will, Ponti asked that the funds in the IRA be distributed to her and the other residuary legatees.

Against this contention the personal representative argued that the IRA was "the same retirement asset with a mere change of custodian and location. Moving the asset from the Quota plan to the Crestar IRA was not a change of the substance, character or nature of the asset." The "pension from Quota" legatees argued, similarly, that the reference in the will to a pension "from Quota" was merely Wheeler's "shorthand designation for the full amount of all decedent's pension or retirement funds wherever maintained rather than a bequest limited to whatever funds

**4.** Specifically, Wheeler bequeathed "the money in my Crestar Bank chequing account" to Daugherty and Johnston, and "the funds remaining in my Crestar Bank Savings Account" to appellee Ponti. *See supra* note 2.

would be found or remain in a specific institution or place at the time of her death."

The probate court found that Wheeler's bequest of her "pension from Quota" was a specific legacy subject to the doctrine of ademption, "whereby the non-existence of a specific asset described in a will, at the time of testator's death, operates to extinguish that bequest" regardless of the actual intentions of the testator. Finding no provision in Wheeler's will for a substitute bequest in the event the "pension from Quota" had been "transmuted or liquidated," the probate court ruled that the gift was adeemed by Wheeler's transfer of "all funds in the Quota International account to the Crestar Bank IRA account." In reaching this conclusion—which meant that the funds in the IRA were distributable to the residuary legatees—the probate court did not explain why it considered the rollover to have extinguished the existence of the "pension from Quota" in Wheeler's estate. The court acknowledged but did not explicitly address the personal representative's argument that there had been no change in "the substance, character, or nature of the assets in question." The court likewise did not address appellants' contention that Wheeler did not limit her bequest to funds in a specific institution or place.[5]

## DISCUSSION

Appellants argue that Wheeler's "pension from Quota" did not cease to exist as part of the testatrix's estate by virtue of the rollover of her retirement funds into an IRA. We agree with this argument and so are constrained to reverse the judgment on appeal.[6]

■ In contrast to other kinds of bequests, "[a] specific bequest is a legacy of a particular, designated asset that only the delivery of that asset can satisfy." *Wyman v. Roesner*, 439 A.2d 516, 519 (D.C. 1981).[7] If the designated asset is not part of the estate at death, the gift is extinguished, or adeems, unless the will provides otherwise. *Id.* at 520; 6 W. BOWE & D. PARKER, PAGE ON WILLS § 54.5 (rev. ed. 1961 & Supp.1999). In *Wyman*, for instance, this court held that where a testator has specifically bequeathed a debt, and the debtor pays off the debt before the testator's death, the bequest fails by ademption and the legatee is not entitled to the proceeds in lieu of the debt (unless the testator's intent that the legatee receive those proceeds is manifest in the terms of the will). The specific legatee's loss may be the residuary legatee's gain. "Unless a contrary intention appears by the will, the property comprised in a devise or bequest in a will that fails or is void or is otherwise incapable of taking effect, shall be deemed included in the residuary devise or bequest, if any, contained in the will." D.C.Code § 18–308 (1997). *Accord Dean v. Tusculum College*, 90 U.S.App. D.C. 304, 305, 195 F.2d 796, 797 (1952). Or, if there is no residuary clause in the will, the property may go to the next of kin by the rules of intestacy pursuant to D.C.Code §§ 19–301 *et seq.* (1997), *see Brinker v. Humphries*, 90 U.S.App.D.C. 180, 181, 194 F.2d 350, 351 (1952), or es-

---

**5.** Appellants moved for leave to take discovery and for an evidentiary hearing relating to Wheeler's intent and the proper interpretation of her will. The probate court did not rule on this motion.

**6.** Appellants also argue, in the alternative, that the bequest of the "pension from Quota" was not a specific legacy at all, but instead was a demonstrative legacy to which the ademption doctrine does not apply. *See In re Estate of Lung*, 692 A.2d 1349, 1350–51 (D.C. 1997). In light of our disposition of this

appeal, we find it unnecessary to address this argument, which is apparently advanced for the first time on appeal. We also do not decide whether appellants' motion for discovery and an evidentiary hearing as to Wheeler's intent and the proper construction of her will should have been granted.

**7.** The common law recognizes general, demonstrative and residuary legacies in addition to specific legacies. *See Wyman*, 439 A.2d at 519–20.

cheat to the District of Columbia pursuant to D.C.Code § 19–701 (1997), *see Knupp v. District of Columbia*, 578 A.2d 702, 703 (D.C.1990) (where residuary clause in will is invalidated, residue escheats).

■ Thus, despite the axiom that in construing a will the testator's intent is the touchstone, in this jurisdiction "[t]he modern view of ademption … does not explore intent" by means of evidence extrinsic to the terms of the will itself. *Wyman*, 439 A.2d at 522 (citing, *inter alia*, *Kenaday v. Sinnott*, 179 U.S. 606, 617–18, 21 S.Ct. 233, 45 L.Ed. 339 (1900)). Instead, it is "presumed" that if the testator made a specific bequest, he intended that bequest to fail if the designated asset is not part of the estate, unless the will in its entirety evinces a contrary intent. This is, of course, not a true evidentiary "presumption," but rather a legal rule adopted in large measure for reasons of practicality and convenience in estate administration.[8]

■ It has been said that "[p]resumptions of intent should be invoked only in the absence of an expression of such intent and ought not to be relied upon to defeat the discernible wishes of the testator, however imprecisely expressed." *Brinker*, 90 U.S.App.D.C. at 183, 194 F.2d at 353 (finding that will indicated intent of testator that if devised property were sold during testator's lifetime, the proceeds from the sale were to stand in its place). *Accord Estate of Lung*, 692 A.2d at 1351; *Wyman*, 439 A.2d at 520. Indeed, it has long been appreciated that in many cases the strict doctrine of ademption does run directly counter to the probable intent of the testator:

> The presumption is stronger that a testator intends some benefit to a legatee, than that he intends a benefit only upon the collateral condition that he shall remain till death, owner of the property bequeathed. The motives which ordinarily determine men in selecting legatees, are their feelings of regard, and the presumption of course is that their feelings continue and they are looked upon as likely to continue.

*Kenaday*, 179 U.S. at 619, 21 S.Ct. 233, (quoting *Tifft v. Porter*, 8 N.Y. 516 (1853)). Specific legacies are therefore "disfavored," and courts will construe a bequest as specific only if the provisions of the will clearly manifest the intention of the testator to make such a bequest. *Wyman*, 439 A.2d at 520; *see also Kenaday*, 179 U.S. at 619–20, 21 S.Ct. 233; *Estate of Lung*, 692 A.2d at 1350–51.

■ Whether a specific bequest has adeemed where the asset has undergone a change but is arguably still part of the estate is a conceptually distinct but nonetheless closely related question. Ultimately it too is a question of the testator's intent, to be discerned from the terms of the will in its entirety. A change in the character of the asset prior to the death of the testator will not result in ademption if the change is insubstantial or immaterial, such as a matter of form rather than substance. *See* 6 W. Bowe & D. Parker, § 54.11. Whether a change in the specifically bequeathed asset adeems the bequest depends in part upon how the asset is described in the will and how that description is to be construed in the light of the surrounding circumstances. "The description may be so broad that it fits equally the right as it existed when the will was made, and the right as it exists when the testator dies." 6 W. Bowe & D. Parker § 54.12, at 263.

---

8. *See Wyman*, 439 A.2d at 523 n. 5

("In many cases where a specifically bequeathed item is absent from the estate, it is difficult — if not impossible — to determine the testator's intent. Because the testator often will have failed to foresee the eventuality that has come to pass, the court could be engaged in a futile effort to surmise an intent that the testator never had. The acceptance of extrinsic evidence such as testimony regarding the testator's oral *declarations of intent would undermine the formalities of writing and execution* established to avoid the possibility of perjury.")

Testator may devise or bequeath property which may or may not be in existence when the will is made, and which is so described by reference to qualities, relationships to different owners, and the like that, from time to time several or many different pieces of property, or rights might fit this description. If testator has devised or bequeathèd a gift of this sort, and if the language of the will is construed so as to speak as of the date of testator's death, the devisee or legatee will take the property which fits the description of the will, although it may well be that testator did not own any of it at the time that the will was made, or even that such property was not in existence at the time that the will was made.

6 W. BOWE & D. PARKER § 48.4, at 16 (footnote omitted.)

■ Since specific legacies are held in disfavor, we must be wary of construing such bequests too narrowly and elevating changes of form over substance, for in both cases the result may be to thwart the testator's wishes. Where a specifically bequeathed asset still exists in the estate, though altered in form, we must not indulge too readily the assumption that the testator's failure to revise his will to reflect the alteration means that he no longer intended to make the specific bequest.

No one familiar with the habits of testators will believe it. The great number of cases where T leaves his will untouched, although a change in circumstances has made it operate in a way he could not possibly desire, precludes any such assumption. Experience seems to warrant exactly the contrary assumption, to suggest that the explanation of

T's failure to change his will is much less likely to be found in any change of intent than in ignorance, forgetfulness, or just the procrastination of an ordinary human being who knew he ought to change his will, meant to, but never quite got around to it.

Phillip Mechem, *Specific Legacies of Unspecific Things*—Ashburner v. MacGuire *Reconsidered*, 87 U. PA. L. REV. 546, 547 (1939).

■ Applying these principles to this case, we conclude that Wheeler's legacy of "any rights and interests in my pension from Quota International, Inc." did not adeem by extinction. Focusing first on the language of the bequest, it is undisputed that with the phrase "my pension from Quota" Wheeler was referring to the investments she had made pursuant to the defined contribution retirement plan in which she participated as an employee of Quota.[9] Wheeler did not limit her bequest to a specific investment or account location by name, and it is in the nature of such retirement plans that the particular investments and accounts may change from time to time (as for instance by a reallocation from one mutual fund to another, or from a mutual fund to a money market account). As in *Estate of Lung*, 692 A.2d at 1351, we attach no special significance to the fact that Wheeler used the word "my" in her description of her gift. Wheeler described the subject of her gift in terms of its *source* (Quota) and its *purpose* during her own life (her retirement). When she rolled over her retirement funds into an IRA at Crestar Bank, those funds remained segregated from monies having any source other than Quota and they remained set aside to support her in her retirement. Both *source* and *purpose*

9. It was appropriate to resort to extrinsic evidence to ascertain the meaning of "my pension from Quota." Extrinsic evidence is not admissible to supply a provision that the testator omitted, nor to establish what he hypothetically would have intended in the event of a contingency which he in actuality failed to foresee and which is not covered by his general intent as discerned from the terms of the will. But where the meaning of words in the will is uncertain, extrinsic evidence of facts and circumstances surrounding the making of the will is admissible to clarify the meaning. *See District of Columbia v. Estate of Parsons*, 590 A.2d 133, 135–36 (D.C.1991); *Baker v. National Sav. & Trust Co.*, 86 U.S.App.D.C. 161, 162, 181 F.2d 273, 274 (1950).

therefore remained constant. The IRA was as much her "pension from Quota" as was her investment with Fidelity prior to the rollover. Thus, the language that Wheeler used to describe her bequest encompassed her IRA.

■ Moreover, the changes effectuated by the rollover—*e.g.*, a new location for the account, a different administrative apparatus, and different funds in which the monies were invested—did not materially alter the identity or the nature of the gift.[10] The rollover in and of itself cannot be said to have betokened a change of testamentary intent.[11] Wheeler's bequest of her "pension from Quota" was an attempt to confer a substantial monetary benefit on the legatees, not, for instance, a unique asset or an heirloom of primarily sentimental value. *Cf. In re Estate of Wiley*, 331 A.2d 343, 345 (D.C.1975) (gift of "something from my home in remembrance"). The transfer of the substance of that monetary bequest to an IRA therefore did not impair the fulfillment of the testatrix' goal—as might, for example, the destruction or sale of a one-of-a-kind asset or a keepsake gift.

■ "[I]n looking for the meaning of a particular clause in a will, a court must not limit its inquiry to isolated expressions but should consider the entire context," including, here, "the concomitant bequests to other beneficiaries in the will." *Estate of Wiley*, 331 A.2d at 345.[12] We think that the design of the will in its entirety confirms that Wheeler intended her "pension" bequest to include her Crestar Bank IRA. Aside from the residuary bequest (which of course does not affirmatively reflect an intention to leave any specific asset to the residuary legatees), the IRA is not even arguably the subject of the other bequests in the will (all of which are specific bequests). Construing the "pension" bequest to mean the IRA does not, therefore, conflict with the other gift intentions that Wheeler expressed. And it is unlikely that Wheeler changed her mind and intended to leave her IRA funds to the residuary legatees without revising her will to say so explicitly; for when Wheeler wanted to leave funds in her other Crestar Bank accounts to the residuary legatees (which she did), she did so explicitly by specific bequests of those funds to those legatees. Appellee Ponti, for example, in addition to being a residuary legatee, is the specific legatee of "the funds remaining in my Crestar Bank Savings Account."

Furthermore, it is evident that the "pension" bequest was a highly significant term of Wheeler's will. It was large in comparison with other bequests; and none of the

---

**10.** We might reach a different conclusion if, for instance, after making her will Wheeler had liquidated her ASAE plan investment and, instead of segregating the funds in an IRA, commingled them in a bank account with monies derived from sources other than Quota. Such commingling might have destroyed the character of the funds as a "pension *from Quota*" and undercut the inference that Wheeler intended to bequeath the proceeds of her Fidelity investments as she originally intended in her will. *Cf. Brinker*, 90 U.S.App.D.C. at 183, 194 F.2d at 353 ("testatrix' care in isolating the proceeds from the sale of the realty lends supports [sic] to the view that her intention at the time of making the will was to give the proceeds to the legatees even though the property might have been sold before testatrix' death"). Similarly, if Wheeler had liquidated her ASAE plan investment but not retired, and had begun to

use the proceeds prior to her retirement, that too might have been a change in the asset material enough to trigger ademption of the legacy.

**11.** By way of contrast, when a testator makes an *inter vivos* gift to a legatee named in his will, that act may betoken an intent to satisfy the legacy by means of that gift, and the legacy may thereupon be adeemed "by satisfaction." *See generally* 6 W. BOWE & D. PARKER § 54.21; W.W. Allen, Annotation, *Satisfaction or Ademption of General Legacy by Intervivos Gift, Transfer, or Payment to the Legatee or Another*, 26 A.L.R.2d 9 (1952).

**12.** Where the issue of construction is based entirely on the wording of the will, the appellate court reviews the interpretation of the will *de novo*. *Estate of Wiley*, 331 A.2d at 345.

four "pension" legatees is a beneficiary under any other provision of the will. (We note, too, that three of these legatees were Wheeler's relatives, and the only relatives mentioned in the will.) Interpreting the will as appellee urges would thus not only deprive the "pension" legatees of a substantial gift, but would also result in disinheriting them entirely rather than partially. This is not a case, therefore, where a testamentary intent to terminate a bequest can be inferred from the relative lack of importance of the gift in the overall scheme of the will.

The will, in short, evinces a considered division of Wheeler's assets among her friends and relations which ademption would upset rather than implement.

It frequently has been remarked that "prior cases interpreting language from different wills executed by different testators provide minimal guidance." *Estate of Lung*, 692 A.2d at 1350–51. "Because the intent of each testator, manifested in the will, is unique, prior cases are instructive but rarely controlling." *Wyman*, 439 A.2d at 520. That said, our holding in this case is consistent with precedent.[13]

This case is not like *Wyman*, where the specific legacy of "the remainder due, if any," on a note was held to be adeemed by payment of the note in full before the testator's death. Not only did the specific item bequeathed in *Wyman*—a debt—no longer exist in any form, but the will evinced the testator's clear intention that the proceeds *not* be substituted for the debt by providing for an alternative bequest in the event the remainder due on the note was less than a specified sum (ten thousand dollars). *Wyman*, 439 A.2d at 518, 521–22. Nor is this case like *Dean*, where the specific legacy of a partnership interest to the testator's co-partners was

held to be adeemed by the testator's sale of that interest in its entirety. There too, the specific item bequeathed—the testator's interest in a business entity—no longer existed as part of the estate in any form, and nothing in the will manifested an intent that the sale proceeds be substituted for it. *Dean*, 90 U.S.App.D.C. at 305, 195 F.2d at 797.

This case is like a number of cases which have arisen in other jurisdictions, in which changes in the specifically bequeathed asset were held not to adeem the bequest. *See* 6 W. BOWE & D. PARKER § 54.11; Vitauts M. Gulbis, Annotation, *Ademption of Bequest of Debt or Balance on Debt*, 25 A.L.R.4th 88 (1983). For instance, in *Stenkamp v. Stenkamp*, 80 Or.App. 550, 723 P.2d 336 (1986), the testator bequeathed his children "[m]y interest in the investment plan with United States National Bank of Oregon," a retirement investment plan provided by his employer. The assets of the testator in this plan comprised cash and stock. When the testator retired, his entire interest in the plan was distributed to him. The cash portion of the distribution could not be traced, but the stock portion remained in the testator's estate (augmented by additional shares received as stock dividends). The children claimed the stock as their specific legacy under the will, but the residuary legatee contended that the legacy had adeemed because the testator no longer had an interest in the investment plan at the time of his death. The Court of Appeals of Oregon rejected this contention on the ground that the transfer of the stock effected "a change in form but not in substance."[14] 723 P.2d at 338.

To like effect are those cases holding that bequests of bank accounts at specified

**13.** *See also* 6 W. BOWE & D. PARKER §§ 54.11 – .12; Note, *Ademption and the Testator's Intent*, 74 HARV. L. REV. 741 (1961); Mechem, 87 U. PA. L. REV. 546.

**14.** As an alternative, independent ground, the court also held that the gift was not adeemed

because the distribution of the testator's interest in the plan was an automatic event over which the testator had no control. We intimate no view as to the correctness of this alternative rationale.

banks are not adeemed merely because the testator withdrew the amounts on deposit and redeposited them in other banks, *see, e.g., In re Estate of Hall,* 60 N.J.Super. 597, 160 A.2d 49 (App.Div.1960) (place of deposit merely descriptive of the things bequeathed, and therefore the removal of those things to another place is immaterial); and cases in which gifts of corporate securities are held not adeemed by exchanges for other securities in the course of corporate reorganizations or consolidations or similar transactions, *see, e.g., Johns Hopkins Univ. v. Uhrig,* 145 Md. 114, 125 A. 606 (1924) (gift of stock identified in will as having been acquired by testator from his father's estate not adeemed when stock was recalled in corporate reorganization and replaced by bonds; testator's ownership of the bonds remained ultimately attributable to same origin as stated in will). See also *Cornwell v. Mount Morris Methodist Episcopal Church,* 73 W.Va. 96, 80 S.E. 148 (1913), where the testatrix had bequeathed a certain sum described in the will as "coal money," a reference to the fact that it was derived from the sale of coal. The court rejected the contention that the legacy adeemed because the form of the funds had changed from a deposit in a bank to an investment in municipal bonds.

Since we conclude that Wheeler's bequest of her "pension from Quota" encompassed the funds in her Crestar Bank IRA and did not adeem, we reverse the judgment of the probate court. We remand with instructions to enter an appropriate order approving the distribution of the IRA to the "pension" legatees in accordance with the terms of the "pension" bequest, subject to whatever provisions are to be made for the payment of income taxes, and subject to any other appropriate conditions consistent with our decision in this opinion.

*So ordered.*