In re ESTATE OF Van S.
LUNG, Deceased.

Rector and Visitors of the University
of Virginia, et al., Appellants.

No. 95–PR–1403.

District of Columbia Court of Appeals.

Argued Oct. 29, 1996.
Decided April 24, 1997.

Julian E. Markham, Jr. with whom John Jude O'Donnell was on the brief, Washington, DC, for appellants.

Robert Bunn for appellee Mason E. Wiggins, Jr.

Before TERRY and RUIZ, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge.

Appellants, trustees of a foundation established by and named in honor of the decedent, Van S. Lung, appeal from the grant of summary judgment interpreting an article of decedent's last will and testament against them. The outcome of this litigation turns narrowly on established differences between demonstrative and specific legacies. Thus the issue presented in this instance is whether certain provisions in the will of Van S. Lung are properly deemed demonstrative or specific. Because we discern no error in the trial judge's conclusion that the questioned legacy is demonstrative, we affirm.

## I. Factual and Procedural History

Van S. Lung died testate on March 28, 1991. Article Twenty–Four of his will creates a legacy bequeathing a total of $500,000 to eight enumerated individuals in amounts varying from $25,000 to $100,000. Lung designated the stock fund contained in one of his two Kidder, Peabody Investment Accounts as the source for these eight sums. Although the Investment Account with the stock fund was worth $693,746.25 overall when Lung died, the stock portion of that account was worth only $46,266.25, more than $450,000 short of the amount needed to satisfy Article Twenty-four's $500,000 legacy.

Lung's will also creates the Van S. Lung Foundation at the University of Virginia (UVA). The general source of funding for this charitable trust is Lung's residuary estate. In addition, Article Twenty–Four names the Foundation as remainderman of the Kidder, Peabody stock fund. There was no remainder, however, because of the stock fund deficiency.

Subsequent to Lung's death, Mason E. Wiggins, Jr., appellee, the personal estate representative, filed suit to construe Lung's probated will. Wiggins represented the interests of the eight enumerated individuals seeking full rather than prorated satisfaction of the bequests totaling $500,000.

Wiggins moved pretrial for summary judgment, arguing that Article Twenty–Four creates a demonstrative legacy as a matter of law. Appellants Larry Lung and others filed a similar motion for summary judgment, claiming instead that the legacy is specific. The University of Virginia and John Israel, a Foundation trustee, now appeal the trial judge's finding in favor of Wiggins that the legacy is demonstrative. They dispute this finding because it will require paying the unsatisfied portion of the eight bequests—over $450,000—out of the residuary estate to which they claim entitlement.

## II. Legacy Classification

■ Legacies may be general, demonstrative, or specific. *See Wyman v. Roesner*, 439 A.2d 516, 519–20 (D.C.1981). We define each type of legacy according to the specificity of the source and the availability of alternative sources in the event of a deficiency. A general legacy may be obtained from any source of the estate. *Id.* at 520. A demonstrative legacy is designated by a particular source and may be satisfied by other sources from the estate if the identified source is insufficient. *Id.* A specific legacy is also derived from a particularized source but may not be satisfied elsewhere. *Id.* at 519.

■ We classify a particular legacy as general, demonstrative, or specific according to the testator's intent. *Id.* at 520. "In construing a will, the testator's intent is the guiding principle—the 'polestar.'" *Id.* A crucial aspect of this determination is the existence of a presumption that the testator did not intend to create a specific legacy. *Id.* "Courts disfavor specific bequests, for if the designated property is not part of the estate at death, the gift generally will be lost through ademption by extinction." *Id.* The intent to create a specific legacy must therefore be especially clear. *Id.*

■ To discern the testator's intent, we focus on the language of the will. *Id.* Two consequences follow from emphasis upon the testator's language. First, prior cases interpreting language from different

wills executed by different testators provide minimal guidance. *Id.* Second, consideration of extrinsic evidence is only permissible to resolve ambiguity. *Id.* The parties here agree that extrinsic evidence is unavailable in any event.

### III. Van S. Lung's Will

In construing the legacy in Article Twenty–Four of Lung's will, the trial judge adhered closely to these principles of classification. Most significantly, the trial judge recognized and applied the presumption that Lung did not intend to create a specific legacy. The rationale of this presumption is perfectly suited to this case. The presumption against specific legacies exists because such bequests are lost if the designated asset is not part of the estate when the testator dies. Here, if the legacy were found specific, eight individuals would lose over $450,000 because they would be forced to prorate less than $50,000 rather than $500,000. We see no error in applying a presumption to a case that exquisitely serves the presumption's purpose. Furthermore, an intention to create a specific legacy was not shown with clarity. The trial judge instead found a clear intention to create a demonstrative legacy.

In reaching this conclusion, the trial judge looked exclusively to the language of the will. Considering the will as a whole, Lung held bequests to particular individuals in higher regard than the residuary estate. For example, in Article Four, Lung named the residuary estate as the source of payment for all taxes. He explicitly stated that no charges were to be assessed against the beneficiaries, even in the event of a deficiency. This provision supports an intention not to preserve the residuary estate at the expense of bequests to individuals. Further, in Article Twenty–Four itself, Lung reveals his expectation that the eight enumerated individuals would receive the full amount of the $500,000 bequest. This follows from his naming the Foundation as remainderman. Lung would not have provided for any remainderman had he not intended for complete payment of the individual bequests. We are unpersuaded that clear proof of intent to create a specific legacy is supplied simply from the presence of "my" preceding "stock" in the Article Twenty–Four bequest.

The trial judge concluded that Lung intended to create a demonstrative rather than specific legacy in Article Twenty Four. Given the presumption against specific legacies and the language in Lung's will indicating Lung's intent to create a demonstrative legacy, we conclude that the trial judge did not err as a matter of law and further that there were no genuine issues of material facts. Accordingly, the judgment of the trial court is affirmed.

*So ordered.*

RUIZ, Associate Judge, concurring:

Where an interpretation of a will is based solely on the language of the will, we review the trial court's determination de novo. *In re Estate of Wiley*, 331 A.2d 343, 345 (D.C. 1975). I agree that the contested provision in Lung's will should be construed as a demonstrative and not a specific legacy. I reach that conclusion, however, not because I interpret the will as being clear in that respect, as the trial court did, but, rather, because the language of the will is not entirely clear that Lung intended a specific legacy. In such situations, we apply a rule of construction that disfavors specific legacies and prefers demonstrative legacies. *Wyman v. Roesner,* 439 A.2d 516, 520 (D.C.1981).